2010 VT 40

# Bruce Youngbluth v. Elisabeth Youngbluth

[6 A.3d 677]

No. 08-527

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed May 28, 2010

*Bruce D. Youngbluth*, Pro Se, Hummelstown, Pennsylvania, Plaintiff-Appellant.

*Susan M. Ellwood*, Montpelier, for Defendant-Appellee.

¶ 1. **Reiber, C.J.** Husband appeals from the Washington Family Court's enforcement order increasing the percentage of his military retirement benefits going to wife under the property division order that was finalized when the parties divorced. We affirm in part and reverse in part.

¶ 2. Husband is a career military man who spent more than twenty years in the United States Marine Corps. On July 1, 2005, husband, who was in his forties at the time, took a forced retirement from the military, and he is now collecting retirement benefits. In the initial divorce proceeding, which began before husband's retirement but was not decided until October 14, 2005, the trial court treated husband's expected monthly retirement benefits as property and included it in the final property division. Specifically, the court granted wife "35% of the marital portion of the retirement plan," which, as the court later clarified, translated to 19.81% of husband's monthly retirement benefits. Husband appealed that determination to this Court, arguing (among other things) that his military retirement benefits should not have been subject to property division. We issued an unpublished entry order

affirming the trial court's original property division. *Youngbluth v. Youngbluth (Youngbluth I)*, No. 2006-083, 2007 WL 5318595, at *3 (Mar. Term 2007) (unpub. mem.).

¶ 3. After husband retired from military service, and after the October 14, 2005 final divorce decree was issued, husband applied for disability benefits from the United States Department of Veterans Affairs (VA). According to husband, this was a routine part of the process of filling out the retirement paperwork. Husband's disability application listed numerous potential disabilities, most of which were denied by the VA. On April 3, 2006, the VA granted husband a 30% disability rating. This meant that a significant portion of husband's taxable retirement benefits would be forfeited and replaced dollar-for-dollar by tax-exempt and garnishment-exempt disability benefits. As a result, wife was now receiving 19.81% of a smaller retirement payment.

¶ 4. Wife was upset with what she viewed as husband's unilateral modification of the final property division. Meanwhile, wife was having trouble receiving any payments at all from the federal Defense Finance and Accounting Service (DFAS). Wife had submitted paperwork to DFAS to receive direct payments of her portion of husband's monthly retirement benefits, but DFAS found the paperwork unacceptable because the trial court's original order referred to 35% of an undefined "marital portion" of husband's retirement benefits. Although this clearly translated to 19.81% of the monthly retirement benefits, the original property division order did not mention that number and therefore did not meet the strict requirements for allowing wife to receive direct payments from DFAS.

¶ 5. Wife filed various motions with the trial court asking the court to grant two modifications to the original property division order: (1) wife wanted the trial court to define the exact percentage of husband's monthly retirement benefits that husband had to pay to wife, so that the order would meet the requirements for receiving direct payments from DFAS; and (2) wife wanted the court to give her a larger portion of husband's retirement benefits than the 19.81% that was granted to wife in the original property division order, since by now husband had sheltered some of his retirement benefits when he received a 30% disability rating from the VA. Wife labeled the latter request as a "motion to amend" the original property division order, since, rather than asking for the 19.81% that was provided to her under the original property

division order, wife was now requesting that the court grant her 22.4% of husband's military retirement benefits. Despite the labeling of wife's request as a "motion to amend," the trial court treated this request as asking for enforcement, rather than modification, of the original order. The court agreed with wife and changed the percentage from 19.81% to 22.4%, based upon expert testimony that 22.4% of the smaller number would equate to the roughly $700 monthly payment that the trial court had in mind when it decided the initial allocation.

■ ¶ 6. Husband raises two main arguments on appeal. First, husband argues that under Vermont law the trial court cannot grant wife any portion of husband's retirement benefits. Second, husband argues that even if the court is allowed to grant wife a portion of husband's retirement benefits, the court erred in changing that portion from 19.81% to 22.4% in an enforcement proceeding.[1]

■ ¶ 7. Husband's first argument merits little discussion; we have already rejected in an earlier proceeding the claim that Vermont law precludes trial courts from granting wife a portion of husband's retirement benefits. See *Youngbluth I*, 2007 WL 5318595, at *3. Husband raised this same argument when he appealed the trial court's initial property division order, and we rejected it for two reasons. *Id.* First, we held that husband failed to properly preserve the issue before the trial court since he raised it for the first time on appeal. *Id.* Second, we held that federal law allows the division of disposable retirement benefits, *id.* (citing 10 U.S.C. § 1408), and "under Vermont law, pension

---

[1] Husband also argues that the trial court improperly assessed interest payments against him. He claims, for instance, that the court erred in assessing him interest on a payment of attorney's fees, since the parties had allegedly stipulated that this payment would be taken out of the amount that wife owed husband. Thus, according to husband, he should not owe any interest on money that wife was essentially withholding from herself. But husband has not provided any support for his claim that the parties stipulated as to how husband would make his payment of attorney's fees. Ordinarily, "we do not search the record for error not adequately briefed or referenced." *Quazzo v. Quazzo*, 136 Vt. 107, 111, 386 A.2d 638, 641 (1978). Here, however, we have found nothing in the underlying trial court order or the printed case that refers to the stipulation upon which husband relies. Further, even if such a stipulation exists, husband's argument fails to address the fact that wife was also assessed interest on payments that she withheld from husband. We therefore find no error in the trial court's assessment of interest payments.

rights acquired during the course of a marriage are subject to equitable distribution," *id.* (citing *Milligan v. Milligan*, 158 Vt. 436, 439, 613 A.2d 1281, 1283 (1992)). Although our ruling in *Youngbluth I* was an unpublished decision without precedential value for other cases, it was also a final judgment for purposes of settling the particular matters disputed between the parties in that particular case. Thus, the trial court was correct in its ruling that husband cannot now collaterally attack the original property division order that we affirmed in *Youngbluth I*. See, e.g., *Hagen v. Hagen*, 282 S.W.3d 899, 905 (Tex. 2009) (holding that "divorce judgments are not vulnerable to collateral attack" even when the "final judgment may be erroneous" (quotation omitted)). We therefore hold that in this particular case husband cannot challenge the original property division awarding wife 19.81% of husband's disposable retirement benefits.

¶ 8. While the finality of the original property division order works against husband's first argument, the principle of finality is one reason why we agree with husband's second argument and hold that wife can receive only 19.81% of husband's disposable retirement benefits. In the recent enforcement order, the trial court increased that number to 22.4% based on the court's interpretation of the original property division order. Unlike situations where our review of a trial court order is limited to determining whether there was an abuse of discretion, the proper interpretation of a previous court order "is strictly a question of law that we must determine independently." *Sachs v. Sachs*, 163 Vt. 498, 501, 659 A.2d 678, 679 (1995); accord *Dartmouth Sav. Bank v. F.O.S. Assocs.*, 145 Vt. 62, 66, 486 A.2d 623, 625 (1984) ("[T]he legal effect of a written instrument is a matter of law determinable at the appellate level."). We therefore do not grant any deference to the trial court's determination that the original property division order intended to provide wife with a larger percentage of husband's disposable retirement benefits.

¶ 9. Further, in our review of the original property division order, we must address husband's argument that federal law preempts state courts from granting wife an interest in husband's disability benefits. The issue of federal preemption is a purely legal question that we review de novo. Cf., e.g., *Meyncke v. Meyncke*, 2009 VT 84, ¶ 6, 186 Vt. 571, 980 A.2d 799 (mem.) (holding that the percentage of wages that can be withheld presents a pure question of law that is reviewed de novo). In our

de novo review of these issues, we hold that, under the plain language of the original property division order and under settled law that state courts cannot grant a former spouse an interest in a military servicemember's disability benefits, the original property division order does not allow wife to now receive a greater percentage of husband's disposable retirement benefits.

■■ ¶ 10. Although wife's original motion was entitled a motion for modification, the trial court seemed to recognize that it was without power to modify the original property division order, and the court referred to its decision as addressing "enforcement motions" that have "only to do with just execution of the judgment already ordered, not the legitimacy of that judgment in the first instance." To reach this conclusion, the trial court had to treat wife's motions as requesting enforcement, rather than modification, because Vermont places great emphasis on the finality of property divisions: "Vermont law is clear that the court cannot modify the property disposition aspects of a divorce decree absent circumstances, such as fraud or coercion, that would warrant relief from a judgment generally." *Boisselle v. Boisselle*, 162 Vt. 240, 242, 648 A.2d 388, 389 (1994); see generally V.R.C.P. 60(b) (listing the circumstances in which a court can grant relief from judgment). The trial court never found that any fraud or coercion occurred here or that there were any other circumstances that would meet wife's burden for showing that she should be granted relief from the original property division order. Cf. *Pill v. Pill*, 154 Vt. 455, 459, 578 A.2d 642, 644 (1990) (rejecting the trial court's statement that it was "not really changing" the original custody order and holding that the court did in fact change the original order and that this change was impermissible without first making the threshold findings necessary for such a change). Further, we need not reach the issue of the appropriateness of a Rule 60(b) modification of the original order because wife does not make that argument on appeal. See *R. Brown & Sons, Inc. v. Int'l Harvester Corp.*, 142 Vt. 140, 142, 453 A.2d 83, 84 (1982) (claims not briefed on appeal are waived). To the contrary, on appeal wife argues that the trial court's order was merely one of enforcement. We therefore leave for another day the question of whether a military servicemember's actions shifting retirement benefits to disability benefits can ever trigger relief from judgment under Rule 60(b). Our decision today applies only to situations where a trial court uses an enforcement proceeding to adjust a former spouse's

percentage of a military servicemember's disposable retirement benefits.

¶ 11. Given that this was an enforcement proceeding, we must "determine independently" what the original property division order granted wife. *Sachs*, 163 Vt. at 501, 659 A.2d at 679. Wife argues, and the trial court held, that the original property division order intended to grant wife a consistent payment of roughly $700 per month from husband's retirement benefits, regardless of any future actions taken by husband. According to wife, when husband waived a portion of his retirement benefits to take disability benefits, he became obligated to provide wife with an offset payment to ensure that wife continued to receive the same amount of money. The trial court agreed and changed the original property division order to grant wife 22.4% of husband's disposable retirement benefits, thereby ensuring — at least for the time being — that wife would continue to receive roughly $700 per month. This was error. The original property division order granted wife 19.81% of husband's "retirement plan," which gave wife an interest only in husband's disposable retirement benefits, not in his disability benefits.

¶ 12. To understand why we must interpret the trial court's reference to husband's "retirement plan" as referring only to husband's disposable retirement benefits, it is helpful to recount the history of state trial courts' authority to treat military retirement benefits and disability benefits as community property. The Supremacy Clause of the United States Constitution proclaims federal law to be "the supreme Law of the Land." Art. VI, cl. 2. Consequently, federal law can preempt state law whenever Congress explicitly states that it is preempting state law or implicitly preempts state law by occupying an entire field of regulation or passing laws that conflict with state law. *Mich. Canners & Freezers Ass'n v. Agric. Mktg. & Bargaining Bd.*, 467 U.S. 461, 469 (1984). In 1981, the United States Supreme Court held that federal law prevented state courts from treating any military retirement benefits as community property. *McCarty v. McCarty*, 453 U.S. 210, 223 (1981), *superseded by statute*, 10 U.S.C. § 1408. According to the *McCarty* Court, Congress intended all military retirement benefits to go directly to military servicemembers and not to their former spouses. *Id.* at 228. The following year, Congress directly responded to *McCarty* by passing the Uniformed Services Former Spouses' Protection Act

(USFSPA), which authorized state courts to treat disposable retirement benefits as community property, 10 U.S.C. § 1408(c)(1), but which also specifically exempted disability benefits from the definition of disposable retirement benefits, *id.* § 1408(a)(4)(B). The Supreme Court interpreted these provisions of the USFSPA in *Mansell v. Mansell*, 490 U.S. 581 (1989). The *Mansell* Court noted that although federal law rarely displaces state law in domestic relations matters, this was "one of those rare instances" where state law was preempted. *Id.* at 587. The *Mansell* Court then held that the *McCarty* decision "completely pre-empted the application of state community property law to military retirement pay," and the states therefore needed "an affirmative grant of authority . . . to treat military retirement pay as community property." *Id.* at 588. The Court concluded that the USFSPA provided this grant of authority to states with respect to disposable retirement benefits, but not with respect to disability benefits — the Court explicitly held that the state courts are without power "to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits." *Id.* at 595.

■ ¶ 13. Even before *Mansell*, this Court specifically stated that although disability benefits can be considered in determining something such as a party's ability to pay alimony, the USFSPA still stands for the proposition that "disability benefits received in lieu of retirement benefits are not subject to division." *Repash v. Repash*, 148 Vt. 70, 74, 528 A.2d 744, 746 (1987) (interpreting 10 U.S.C. § 1408). Even wife concedes in her brief that VA disability benefits are not subject to garnishment or attachment in a property distribution relating to divorce.

■ ■ ¶ 14. It is in this light that we must interpret the trial court's original property division order, which refers to 19.81% of husband's "retirement pay." Given that *Mansell* held that state courts are without power to divide disability benefits in a property division order, we agree with those courts that have held that in this type of situation the trial court's order cannot be read to have granted wife an interest in husband's disability benefits. See, e.g., *Morgan v. Morgan*, 249 S.W.3d 226, 231-32 (Mo. Ct. App. 2008). The *Morgan* court explains the significance of *Mansell* as follows:

> Regardless of the wording of the dissolution judgment, *Mansell* allows only *disposable* retired pay to be considered as marital property. Total retired pay amounts that

do not fit into the category of disposable retired pay cannot be divided in a dissolution judgment. This includes both disability benefits and amounts waived to receive disability benefits. Therefore, the omission of the word "disposable" from the original dissolution judgment is immaterial. The dissolution court could not have awarded [the former spouse] a fraction of [the military servicemember's] total retired pay.

*Id.* Thus, even if the original property division order had explicitly granted wife an interest in husband's total retirement benefits, federal law would require us to read the order as applying only to disposable retirement benefits. See *Gallegos v. Gallegos*, 788 S.W.2d 158, 160 (Tex. App. 1990) (citing *Mansell*, 490 U.S. 581). In *Gallegos*, the original property division order granted the former spouse 21.5% of the military servicemember's "*gross* present and future military retirement pay," which the trial court specifically defined as including over $300 in disability benefits that were received in lieu of retirement benefits. *Id.* (emphasis added). On appeal, the *Gallegos* court struck that part of the trial court's order and held that federal law precluded state courts from granting the former spouse any portion of the military servicemember's disability benefits. *Id.* (citing *Mansell*, 490 U.S. 581). The *Gallegos* court correctly noted that under *Mansell*, "state courts do not have the power to treat military retirement pay that has been waived in order to receive V.A. Disability benefits as property divisible upon divorce." *Id.* Thus, here, where the trial court's original property division order gave wife a specific portion of husband's "retirement plan," the trial court could not have intended to award wife any percentage of disability benefits that husband might earn in the future. We therefore must interpret the trial court's reference to "retirement pay" as including only husband's disposable retirement benefits, which under federal law does not include disability benefits received in lieu of retirement benefits.

¶ 15. Wife argues, and the trial court held, that it would be unjust to allow a military servicemember to "unilaterally" modify a judgment by reclassifying the form in which he receives payments. State courts are split on this issue.[2] One likely reason

_____
[2] See *Black v. Black*, 2004 ME 21, ¶ 10, 842 A.2d 1280 ("Since *Mansell*, jurisdictions have divided on the question of whether the USFSPA limits the authority of

for this split is that *Mansell* often leads to seemingly unfair results that state courts are understandably loathe to accept. In *Mansell*, Justice O'Connor noted in her dissenting opinion that the "harsh reality" of the majority's holding was "that former spouses . . . can, without their consent, be denied a fair share of their ex-spouse's military retirement pay simply because [the military servicemember] elects to increase his after-tax income by converting a portion of that pay into disability benefits." 490 U.S. at 595. The majority in *Mansell* did not dispute this point. *Id.* at 594. Rather, the Court explicitly recognized that exempting disability benefits from divorce proceedings could lead to spouses like wife receiving a less-than-fair share of property:

> We realize that reading the [USFSPA] literally may inflict economic harm on many former spouses. But we decline to misread the statute in order to reach a sympathetic result when such a reading requires us to do violence to the plain language of the statute and to ignore much of the legislative history. Congress chose the language that requires us to decide as we do, and Congress is free to change it.

*Id.*; see also *id.* at 592 (noting that when Congress defined disposable retirement benefits as excluding disability benefits, Congress made the "decision to shelter from community property law that portion of military retirement pay waived to receive veterans' disability payments"). Given this "harsh reality," *id.* at 595 (O'Connor, J., dissenting), it is not surprising that "*Mansell* . . . [has] led many state courts to look for creative solutions to prevent a former spouse from losing his or her interest in the military retirement as the result of unilateral action on the part of the military spouse." *In re Marriage of Smith*, 56 Cal. Rptr. 3d 341, 345 (Ct. App. 2007).

---

state courts to grant relief when . . . a postjudgment conversion of retirement pay to disability pay divests the share of retirement pay allocated to a former spouse in an earlier divorce judgment."); see also discussion, *infra*, ¶ 20, and cases cited therein; see generally A. Wooster, Annotation, *Construction and Application of Federal Uniformed Services Former Spouse Protection Act in State Court Divorce Proceedings*, 2003 A.L.R.5th 7, §§ 55(a) (collecting cases where courts have in various circumstances awarded or considered disability benefits in a property division order or modification or enforcement of that order) & 55(b) (collecting cases where courts have refused to do so).

¶ 16. Rather than joining those courts that have found "creative solutions" around *Mansell*, we recognize that, regardless of whether we agree or disagree with it, a decision by the United States Supreme Court on a matter of federal law "is binding upon the state courts." *Chesapeake & O. Ry. v. Martin*, 283 U.S. 209, 221 (1931). Other courts have similarly noted that *Mansell* must be followed, even when it leads to seemingly unfair results. See, e.g., *Wallace v. Fuller*, 832 S.W.2d 714, 718-19 (Tex. App. 1992). In *Wallace*, the trial court had partitioned a military servicemember's disability benefits, and the state appellate court "reluctantly" overturned the decision. *Id.* at 714. The *Wallace* court noted that it "join[ed] the *Mansell* dissent in decrying a decision that permits Wallace to enjoy one hundred percent of the military benefits accumulated during marriage to the total exclusion of his former spouse's interest." *Id.* at 718. The court criticized *Mansell* on a number of grounds, including the fact that it created a "windfall" for military servicemembers. *Id.* at 719. Nevertheless, the court recognized that *Mansell* was unambiguous on this point, and the court therefore "acknowledge[d] [its] duty to follow *Mansell's* holding that the [USFSPA] precludes a [state] court's authority to divide any military benefits other than 'disposable retired pay.' " *Id.* Many other courts have come to this same conclusion, even though it sometimes creates an unfair hardship for former spouses. See, e.g., *Davis v. Davis*, 777 S.W.2d 230, 232 (Ky. 1989) ("[W]e recognize the potential for inequity to the former spouse, but conclude that the wording of [the USFSPA] evidences an intention on the part of Congress to make these [disability] payments solely for the use of the disabled veteran.").

¶ 17. Given our holding that the original property division order did not grant wife any interest in disability benefits that the VA later awarded to husband, an enforcement proceeding of that order cannot grant wife a larger percentage of husband's disposable retirement benefits. Our holding in *Mason v. Mason*, 2006 VT 58, 180 Vt. 98, 904 A.2d 1164, is not to the contrary. Wife cites *Mason* as support for using an enforcement order to change a number to better reflect the intent of the original divorce order. Wife is correct that the original decree in *Mason* awarded the husband 16,066 of the wife's 48,200 shares of stock, and this Court affirmed a trial court enforcement order giving the husband an additional 8,033 shares. But *Mason* is easily distinguishable from this case. To begin, *Mason* did not involve the federal preemption

issue that arises in this case. Thus, whatever powers the trial court had to reapportion a property division in *Mason*, those powers are preempted by federal law here. Further, in *Mason*, the parties were still married when the wife acquired a right to additional shares through a stock split. The wife never informed her husband or the court of those additional shares, even though the shares "vested before the parties signed the stipulation and before the divorce was final." *Id.* ¶ 2. *Mason* stands for the proposition that one person cannot hide vested assets from the other while a divorce is pending. Here, on the other hand, husband did not have any vested right to disability benefits while he was married. Rather, the parties were divorced on October 14, 2005, and it was not until November 9, 2005 that the VA even received husband's disability application. The VA could easily have denied husband's application altogether, and in fact the VA did deny a number of husband's requests when the VA awarded him only 30% disability. Thus, none of husband's disability benefits were vested at the time of the divorce. Unlike *Mason*, this is not a situation where one party was hiding vested assets from the other. The trial court therefore erred in using an enforcement proceeding to change the percentage of husband's retirement benefits that husband owed wife.

■■ ■ ¶ 18. Our decision in *Mason* represented an exception; the general rule is that enforcement proceedings should not disturb the plain language of the original property division order. As noted earlier, one reason that we must stick to the plain language of the original property division order is that property division orders are meant to be final. Here, the trial court correctly recognized that "a property settlement is meant to happen once." Under Vermont law, the initial property division order "shall settle the rights of the parties to their property." 15 V.S.A. § 751(a). Parties should not have to bring further litigation whenever future actions affect the division of benefits. We recognize that it may be argued that here it was husband's actions — in unilaterally applying for disability benefits — that upset the finality of the original property division order. To focus on this, however, is to ignore the critical point that finality is about ending litigation. Indeed, we define a final judgment as one where "the effect . . . is to end the litigation." *City of St. Albans v. Goodrich*, 135 Vt. 241, 242, 373 A.2d 549, 549 (1977). Husband was well within his rights to apply for disability benefits. See *Kramer v.*

*Kramer*, 567 N.W.2d 100, 110 (Neb. 1997) (holding in a similar situation that there was "no evidence that the husband took any improper or unlawful action," since "[n]o provision in the original decree or the modified decree prohibited him from exercising his right to apply for service-connected disability benefits or from waiving a corresponding amount of his retirement benefits if his application was approved"). His actions did not necessitate any further litigation, since he could continue to pay wife 19.81% of his disposable retirement benefits. It is wife who sought further litigation to change the number from 19.81% to 22.4%.

¶ 19. Other courts have concluded that in general a party cannot be required to pay more than the original percentage stated in the final property division order. For instance, in *Ex parte Billeck*, 777 So. 2d 105 (Ala. 2000), the Alabama Supreme Court overturned a lower court decision that had forced the husband to pay additional money to the wife when, as in this case, the wife started receiving less money from the husband's military retirement benefits because the husband applied for and was granted disability benefits. One of the reasons the *Billeck* court sided with the husband was that "[t]he husband ha[d] complied with the literal language of the judgment" by paying the full percentage of disposable retirement benefits. *Id.* at 109. Similarly, here husband need pay only 19.81% of his disposable retirement benefits to be in full compliance with the literal language of the original property division order.

¶ 20. The trial court's decision relied on cases from the Tennessee Supreme Court and from intermediate courts of appeal in Arizona, Arkansas, Colorado, Missouri, and New York, all of which the trial court found to have held that a military servicemember cannot "unilaterally" modify a judgment by reclassifying the form in which the servicemember receives payments. See *Johnson v. Johnson*, 37 S.W.3d 892 (Tenn. 2001); *In re Marriage of Gaddis*, 957 P.2d 1010 (Ariz. Ct. App. 1997); *Surratt v. Surratt*, 148 S.W.3d 761 (Ark. Ct. App. 2004); *In re Marriage of Lodeski*, 107 P.3d 1097 (Colo. App. 2004); *In re Marriage of Strassner*, 895 S.W.2d 614 (Mo. Ct. App. 1995); *Mills v. Mills*, 802 N.Y.S.2d 796 (App. Div. 2005). We recognize that the first two of these cases — *Johnson* and *Gaddis* — directly support wife in the appeal before this Court, as do other cases not cited by the trial court. See, e.g., *Black*, 2004 ME 21. Indeed, some courts claim that the "majority of courts have upheld the division of total

retired pay," *In re Marriage of Hayes*, 208 P.3d 1046, 1051 (Or. Ct. App. 2009), or that the "majority of state courts, on one theory or another, take equitable action to compensate the former spouse" in these types of situations, *Surratt*, 148 S.W.3d at 767. Despite these claims, our research reveals no clear majority viewpoint here, and there are many cases that directly support husband's position that — at least when the original property division order states an exact percentage and contains no indemnity provision — a former spouse cannot use an enforcement proceeding to receive an increased percentage to offset the military servicemember's subsequent application and receipt of disability benefits. See *Billeck*, 777 So. 2d at 109; *Clauson v. Clauson*, 831 P.2d 1257, 1264 (Alaska 1992); *Ashley v. Ashley*, 990 S.W.2d 507, 508-09 (Ark. 1999); *Robinson v. Robinson*, 647 So. 2d 160, 161 (Fla. Dist. Ct. App. 1994) (per curiam); *Jones v. Jones*, 780 P.2d 581, 584 (Haw. Ct. App. 1989); *In re Marriage of Pierce*, 982 P.2d 995, 998 (Kan. Ct. App. 1999); *Wright v. Wright*, 594 So. 2d 1139, 1142 (La. Ct. App. 1992); *Morgan*, 249 S.W.3d at 233; *Moon v. Moon*, 795 S.W.2d 511, 514 & n.2 (Mo. Ct. App. 1990); *Halstead v. Halstead*, 596 S.E.2d 353, 357 (N.C. Ct. App. 2004); *Troxell v. Troxell*, 28 P.3d 1169, 1171-72 (Okla. Civ. App. 2001); *Hagen*, 282 S.W.3d at 905; *Thomas v. Piorkowski*, 286 S.W.3d 662, 669 (Tex. App. 2009); *Geesaman v. Geesaman*, Nos. CK92-3641, 92-7-30-DIV, 1993 WL 777094, at *5 (Del. Fam. Ct. July 21, 1993); *Gilliland v. Stanley*, No. 3258, 1997 WL 180587, at **2-3 (Tenn. Ct. App. Apr. 16, 1997); *Sharp v. Sharp*, No. 04-08-00921-CV, 2009 WL 3298131, at *2 (Tex. App. Oct. 14, 2009); *Press v. Press*, No. 03-97-00432-CV, 1998 WL 271054, at *3 (Tex. App. May 29, 1998).[3] We find this latter line of cases more persuasive than the cases

---

[3] It is possible that those courts that have claimed that there is a majority on this issue have conflated the consideration of disability benefits for a property division award with the consideration of disability benefits to determine child support or alimony. For instance, in *Robinson*, the court explicitly held that under federal law "former wife's special equity interest in former husband's retirement benefits was extinguished by operation of law upon the reallocation of former husband's benefits from retirement to disability," 647 So. 2d at 161, but the court went on to note that disability benefits could be considered for purposes of alimony, *id.* at 161-62. We agree with the statement that "the overwhelming majority of courts [have held] that VA disability payments may be considered *as income* in awarding spousal support." *In re Marriage of Morales*, 214 P.3d 81, 85 (Or. Ct. App. 2009) (emphasis added). In fact, this Court has stated that although federal law "would preclude an assignment or apportionment of plaintiff's veteran disability benefits, it does not preclude consideration of disability benefits by a trial court as a source of income

that the trial court relied upon to rule in favor of wife on this issue.

¶ 21. Two of the cases cited by the trial court — *Lodeski* and *Mills* — are easily distinguishable. In *Lodeski*, the original property division order granted the wife a specific dollar amount, and the court was therefore able to use an enforcement proceeding to guarantee that she continued to receive those payments. Here, on the other hand, the property division order grants wife only a percentage and therefore does not guarantee any fixed dollar amount. *Mills* is distinguishable because there the husband had agreed to make certain payments as both an equitable property division and as spousal support, and the court therefore held that the husband was contractually bound to continue to provide support even after he was classified as 100% disabled. Here, on the other hand, husband's payments from his retirement benefits were not meant for spousal support, and husband has not agreed to any minimum payment.

¶ 22. The trial court's reliance on *Surratt* and *Strassner* is also misplaced. In each of those cases, unlike the case before us on appeal, the original property division order contained an indemnity provision protecting the spouse from any efforts by the military servicemember to take disability benefits or do anything else that would decrease retirement benefits. *Strassner* is particularly enlightening with respect to the significance of this distinction. In *Strassner*, the trial court's initial property division order included a special provision requiring the husband to either (1) refrain from doing anything (such as applying for disability benefits) that would reduce the amount of the payments going to the wife, or (2) indemnify the wife for any sums reduced by such action. Although here the trial court cited *Strassner* as supporting the wife's argument, it actually supports husband's position. Last year, a separate appellate division of the Missouri Court of Appeals distinguished *Strassner* because "[h]ere, there was no indemnity clause protecting [wife] from the possibility of [hus-

upon which an award of alimony may be based." *Repash*, 148 Vt. at 73, 528 A.2d at 745. Further, the United States Supreme Court has held that federal law does not preempt state courts from considering a military servicemember's disability benefits as income for purposes of determining a military servicemember's ability to pay child support. *Rose v. Rose*, 481 U.S. 619, 630 (1987). Nevertheless, these cases are inapplicable here, since husband's alimony and child support obligations are not at issue in this appeal.

band's] becoming eligible for and receiving disability benefits." *Morgan*, 249 S.W.3d at 233. The same could be said in this case because the trial court's original property division order did not include any indemnity clause.

¶ 23. Without an indemnity clause, and without any specific dollar amount guaranteed to wife, the trial court's order put wife on constructive notice that 19.81% of husband's retirement benefits could result in a different dollar amount from month to month.[4] This is one reason that other courts have refused to allow a retroactive change of a set percentage. See, e.g., *Morgan*, 249 S.W.3d at 233 (servicemember's subsequent approval for disability benefits — lowering his retirement benefits — "was merely a contingency for which [the former spouse] was unprotected").

 ¶ 24. The trial court's actions here represented an attempt to attach funds that federal law does not allow the trial court to distribute as property in a divorce proceeding. See, e.g., *Pierce*, 982 P.2d at 998 (*"Mansell* makes it perfectly clear that the state trial courts have no jurisdiction over disability benefits received by a veteran. . . . We conclude *the court may not do indirectly what it cannot do directly."* (emphasis added)); *King v. King*, 386 N.W.2d 562, 565 (Mich. Ct. App. 1986) ("[W]e agree with [the military servicemember] that his military pension may not be considered directly or indirectly in the distribution of the marital property." (quotation marks omitted)); see also *Jones*, 780 P.2d at 584 (vacating a property division order that awarded the wife assets specifically to offset the husband's disability benefits). By raising wife's percentage of husband's disposable retirement benefits, the trial court was clearly offsetting the effect that husband's receipt of disability benefits had on the payments due to wife. As the Alaska Supreme Court noted in a case very similar to this one, although courts can look at disability benefits when determining the proper allocation in the initial property division order, courts cannot use an enforcement proceeding to "simply shift an amount of property equivalent to the waived retirement pay from the military spouse's side of the ledger to the other spouse's side." *Clauson*, 831 P.2d at 1264. The *Clauson* court

---

[4] Federal statutes clearly delineate a number of ways in which military disposable retirement benefits are automatically reduced, see 10 U.S.C. § 1408(a)(4)(A)-(D), including the exact situation of waiving retirement benefits in favor of disability benefits, *id.* § 1408(a)(4)(B).

explicitly rejected efforts by a trial court "to regain the status quo as if the *Mansell* decision did not exist." *Id.* The court explained that the trial court's enforcement order violated *Mansell* because "[t]he effect of the order was to divide retirement benefits that have been waived to receive disability benefits." *Id.*

¶ 25. Some courts have gone even further and held that former spouses cannot use the original proceeding to impose indemnity provisions or other protections against future actions by the military servicemember, since federal law precludes spouses from benefitting in any way from a military servicemember's disability benefits. *Halstead*, 596 S.E.2d at 357. Specifically, in what is often referred to as the anti-attachment clause, federal law states that VA benefits "shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." 38 U.S.C. § 5301(a)(1).[5] Although the *Mansell* Court did "not decide whether the anti-attachment clause . . . independently protects" disability benefits, 490 U.S. at 587 n.6 (citation omitted), the *Halstead* court did reach this issue and held that indemnity provisions relating to disability benefits violate the prohibition on attaching disability benefits before receipt by the beneficiary. *Halstead*, 596 S.E.2d at 357 (citing 38 U.S.C. § 5301(a)(1)); see also *Cunningham v. Cunningham*, 615 S.E.2d 675, 682 (N.C. Ct. App. 2005) (overturning a trial court order and noting that upon remand the new order cannot foreclose the military servicemember from applying for disability benefits); *Press*, 1998 WL 271054, at *3 (holding that state courts cannot enforce divorce provisions that preclude military servicemembers from subsequently shifting retirement benefits to disability benefits). But see, e.g., *Abernethy v. Fishkin*, 699 So. 2d 235, 239-40 (Fla. 1997) (holding that although the "division of veterans' disability benefits, whether through court order or settlement agreement, [was] preempted by federal law," an indemnity agreement that allowed the wife to later obtain damages in the amount of the husband's waived retirement benefits was enforceable).

---

[5] Many of the cases interpreting § 5301 refer to an earlier version of the statute, § 3101. Congress renumbered this and many other statutory sections in 1991, without making any substantive changes to this statute. See Department of Veterans Affairs Health-Care Personnel Act of 1991, Pub. L. No. 102-40, § 402, 105 Stat. 187.

¶ 26. We do not need to go as far as *Halstead* in our decision today, since here there was no indemnity provision in the original order. Rather, here the trial court in effect retroactively added an indemnity provision to the original order to protect wife. This Court has previously held that where the language of a property division order "could have provided for security, but it failed to do so," we will not retroactively add provisions to protect one of the parties. *Sumner v. Sumner*, 2004 VT 45, ¶ 9, 176 Vt. 452, 852 A.2d 611 (citation omitted). We recognize that the trial court was faced with a difficult situation and that it was attempting to find an equitable solution, but such a solution was not possible in an enforcement proceeding given the clear text in the original property division order granting wife only 19.81% of husband's disposable retirement benefits. As we have noted in similar situations, when a party's "main complaint is not with the text of the [original property division order], but with its unexpected outcome," it is error for the trial court "to stray from the clear language of the . . . order and to recast the equities." *Sachs*, 163 Vt. at 505, 659 A.2d at 681-82. Other courts have similarly held that trial courts cannot use enforcement proceedings to add indemnity provisions that were not in the original property division order. See, e.g., *Troxell*, 28 P.3d at 1171 (holding that retroactive indemnity provisions were invalid because they were "not in conformity with the terms of the [original] divorce decree").

¶ 27. The Texas Supreme Court recently addressed this same issue in a case where the original property division order referred only to a specified percentage of the military servicemember's retirement benefits and said nothing about disability benefits. *Hagen*, 282 S.W.3d 899. The *Hagan* court held that the decree must be interpreted literally as "not provid[ing] [that the wife] is to receive payments calculated on any other basis, or that she is to receive part of [the husband's] VA disability compensation." *Id.* at 908. The court recognized that although its conclusion apparently "worked an inequity" on the former spouse, no other interpretation of the original property division was possible. *Id.* After *Hagen*, an appellate court reached a similar result, with Justice Barnard "reluctantly" concurring in what she viewed as the "grossly unfair" result of allowing a military servicemember "to unilaterally make an election seventeen years after the parties negotiated a property division that necessarily changes that

division." *Sharp*, 2009 WL 3298131, at **2-3 (Barnard, J., concurring). While the fairness question is debatable, see *Hagen*, 282 S.W.3d at 908 (when there was no indication that, at the time of the original order, the former spouse did not "have full opportunity to present her legal and equitable positions, present her proof, and request the decree she wanted the trial court to enter," it was fair to hold her to the terms of that order), Justice Barnard ultimately concluded that federal law precludes any other result: "Congress will need to revisit" the issue before state courts will have the power to reach a different outcome. 2009 WL 3298131, at *3 (Barnard, J., concurring); accord, e.g., *Moon*, 795 S.W.2d at 514 & n.2 (holding that state courts cannot retroactively change a set percentage and that although "this result allows former military personnel unilaterally to alter the terms of a final judgment dividing marital property," the United States Supreme Court compelled such as result in *Mansell*). As one court has stated, federal law is "very clear" that the former spouse has "no right to those amounts of retirement benefits which the [former military servicemember] waived so he could receive disability benefits." *Wright*, 594 So. 2d at 1142. We come to the same conclusion today.

¶ 28. For these reasons, we hold that the trial court erred when it used an enforcement proceeding to increase wife's percentage of husband's disposable. retirement benefits. Our holding today is a narrow one. We express no view on whether a former spouse in another case could receive an increased share of a military servicemember's disposable retirement benefits either through an indemnity provision in the original property division order or through meeting the standard in Rule 60(b) for relief from judgment. We hold only that in this case an enforcement proceeding cannot provide the mechanism for this type of adjustment.

*Reversed and remanded for reinstatement of 19.81% as the allocation to wife of husband's disposable retirement benefits; affirmed in all other respects.*

¶ 29. **Johnson, J.,** concurring. I write separately to emphasize that though the procedural posture of this case dictates the result reached by the majority, a motion under Rule 60(b) may provide a vehicle for relief where a spouse has been intentionally misled during a divorce proceeding as to a veteran's intentions with

regard to application for disability benefits. Indeed, the troubling facts of this case — including the timing of the divorce order and husband's application for disability benefits as well as husband's testimony during the divorce proceedings that he had "no health problems" — indicate that had the legal issues been properly raised, wife may have had a remedy. I agree with the majority, however, that a remedy for the unfairness wrought by husband's unilateral decision to convert his military retirement benefits to disability benefits cannot be to merely put in place a new property distribution under the guise of enforcement.

¶ 30. This case arises from what appears to be a contentious and much-litigated property distribution following husband and wife's divorce. The parties were married in October 1989 and separated in October 2003. Husband entered the military in 1980 and was in military service primarily with the Marine Corps, up until his retirement in July 2005. Throughout the marriage, the couple moved on a regular basis to accommodate husband's military assignments. In addition, husband was frequently away from the family home and spent months at a time away at sea or deployed to foreign assignments. While husband was away, wife managed the household and was the primary caretaker for the parties' two sons. Until 2002, wife was employed outside the home only for brief periods and only on a part-time basis. The divorce proceedings occurred in the spring of 2005; all parties were aware, however, that husband would be required to retire from the military on July 1, 2005. Over his twenty-two years of military service, husband accrued a defined benefit retirement plan and was thus eligible to receive monthly retirement benefits beginning on July 1, 2005. These retirement benefits were treated as marital property for purposes of the divorce settlement.

¶ 31. In the property distribution order, the trial court noted that because wife was awarded a larger share of the marital estate, rather than award wife a full fifty percent of the marital share of husband's defined benefit pension, it was more equitable that wife receive thirty-five percent. The court noted that such a figure "will provide some retirement cushion for [wife] but ensures that [husband] will have available the majority of the funds that he worked so hard to earn." The court also noted that "[t]he pension is a significant benefit because it is payable now and will continue to be paid until [husband] dies." In addition to the property distribution, the court awarded a limited amount of

spousal support to wife. It based the spousal support award, in part, on its assumption that wife would be entitled to approximately $700 per month as her share of husband's military retirement benefits.

¶ 32. The final divorce and property distribution order was issued on October 14, 2005, and husband applied for disability benefits on November 9, 2005. On April 3, 2006, husband was found to be thirty percent disabled and was approved for partial disability benefits. The main subject of the current dispute is over the effect that husband's subsequent waiver of thirty percent of his military retirement benefits in favor of disability benefits has on the final property distribution.[6] Wife argues that her award of thirty-five percent of husband's retirement benefits translated into a certain dollar amount ($700 per month) and that dollar amount should be enforced regardless of husband's conversion of thirty percent of the retirement benefits into disability benefits.

¶ 33. I agree with the majority that effecting the type of modification wife argues for here simply by calling it "enforcement" is an affront to the finality of property distributions and an end-around to the Supreme Court's holding in *Mansell v. Mansell*, 490 U.S. 581 (1989). Such a holding, however, does not preclude vacating a property distribution under Vermont Rule of Civil Procedure 60(b)(3) on the basis of fraud. Here, wife did indeed bring a Rule 60(b) motion, and the trial court arguably should have addressed this motion, rather than recharacterizing it as a motion for enforcement. Even framed as a Rule 60(b) motion, however, wife's motion is problematic in its characterization of the issue as a "post judgment change[] in circumstances" necessitating an equitable adjustment of the nonexempt portion of a retired servicemember's pension. The theory under which wife brought this action characterized husband's waiver of retirement benefits in favor of disability benefits as newly discovered evidence. Thus, she did not argue that husband perpetrated a fraud at the divorce proceeding by failing to disclose his intentions to apply for disability benefits; indeed, her theory appears to have been just the opposite, arguing instead that the application for disability benefits was unanticipated by both parties at the time of the

---

[6] The divorce order became final following this Court's decision in *Youngbluth v. Youngbluth* (*Youngbluth I*), No. 2006-083, 2007 WL 5318595, at *3 (Mar. Term 2007) (unpub. mem.).

divorce proceedings. Though the trial court hints at the possibility that husband made false representations during the divorce proceedings, it is not a theory advocated by wife's counsel either at the trial court or on appeal.[7]

¶ 34. In enacting the Uniformed Services Former Spouses' Protection Act (USFSPA), Congress recognized the unique circumstances of the military family, including the sacrifices made by military spouses, and sought to protect the economic security of those spouses upon divorce. *Mansell*, 490 U.S. at 602 (O'Connor, J., dissenting). Military wives in particular are often faced with a daunting prospect following divorce because " 'frequent change-of-station moves and the special pressures placed on the military spouse as a homemaker make it extremely difficult to pursue a career affording economic security, job skills and pension protection.' " *Id.* (quoting S. Rep. No. 97-502, at 6 (1982) *as reprinted in* 1982 U.S.C.C.A.N. 1596, 1601). Thus, Congress sought to remedy the "dire plight" of many military wives following divorce by recognizing that the military pension was often the most important asset in a military marriage and allowing it to be distributed as marital property at divorce. *Id.*

¶ 35. As the majority states, *ante*, ¶ 12, the Supreme Court's decision in *Mansell* interprets the USFSPA quite narrowly and accordingly limits the property assets state courts may equitably divide at divorce. 490 U.S. at 583. Over a vigorous dissent, the Court noted that 10 U.S.C. § 1408(a) presented "one of those rare instances where Congress has directly and specifically legislated in the area of domestic relations." *Id.* at 587. The Court concluded that though § 1408(c)(1) affirmatively grants state courts the

---

[7] Despite a claim for fraud not being properly before it, in its post-judgment order, the trial court noted:

> What complicates this case is that [husband] was found eligible for partial veteran's disability benefits on April 28, 2006, shortly after the Final Order. Although the disability qualification process must have been well underway when the divorce was tried — husband says it took nine months — the possibility of this occurrence evidently was not made known to the trial judge and consequently was not within the contemplation of the Final Order.
>
> . . . .
>
> . . . [Husband's] failure to be candid with the trial court about his plan to have pay reclassified, underway at the time of trial, is not suggestive of good faith and indicates a longstanding plan merely to evade equitable settlement because he did not agree with it.

power to divide military retirement benefits, because Congress explicitly removed the amount of pay waived by retirees for disability benefits from the definition of retirement benefits, such disability benefits could not be divided as property at divorce. *Id.* at 589.

¶ 36. Justice O'Connor, joined in her dissent by Justice Blackmun, roundly criticized the "harsh reality" of the Court's holding. *Id.* at 585 (O'Connor, J., dissenting). The dissent emphasized that the purpose of the USFSPA was to provide greater protection to military spouses:

> To read the statute as permitting a military retiree to pocket 30 percent, 50 percent, even 80 percent of gross retirement pay by converting it into disability benefits and thereby to avoid his obligations under state community property law, however, is to distort beyond recognition and to thwart the main purpose of the statute, which is to recognize the sacrifices made by military spouses and to protect their economic security in the face of a divorce.

*Id.* at 601-02. Twenty years later, Congress has not yet heeded Justice O'Connor's call to "address the inequity created by the Court." *Id.* at 604. The existing law, simply put, is that military retirement benefits are divisible marital property upon divorce, and veterans' disability benefits are not. State courts, however, are not without power to remedy situations in which a divorce judgment is premised on fraudulent representations by a military retiree with regard to his decision to waive retirement in favor of disability benefits.

¶ 37. Though property settlements following divorce are final, they may be modified in circumstances indicating "fraud or coercion, that would warrant relief from a judgment generally." *Boisselle v. Boisselle*, 162 Vt. 240, 242, 648 A.2d 388, 389 (1994); accord V.R.C.P. 60(b)(3) (providing relief from judgment based on "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party"); *Gavala v. Claassen*, 2003 VT 16, ¶ 1, 175 Vt. 487, 819 A.2d 760 (mem.) (upholding trial court's grant of Rule 60(b)(3) motion based on party's false claims that he was Pennsylvania resident to avoid Massachusetts jurisdiction over child support obligation); *Bardill Land & Lumber, Inc. v. Davis*, 135 Vt. 81, 82, 370 A.2d 212,

213-14 (1977) (concluding that where defendant, in answering pretrial interrogatories, filed false answer to specific inquiry as to material information, trial court erroneously denied plaintiff's Rule 60(b)(3) motion for relief from judgment); *Terwilliger v. Terwilliger*, 64 S.W.3d 816, 818 (Ky. 2002) (concluding that "by filing a settlement agreement with knowingly undervalued marital assets, [the husband] used the proceedings as a tool to defraud his wife" and justified reopening the property division); *Ray v. Ray*, 647 S.E.2d 237, 241 (S.C. 2007) (concluding that a party's concealment of marital assets and intentional delay of a payment from an investment, coupled with a showing that party "acted with an intent to deceive or defraud the court" justified relief under Rule 60(b)(3) (quotation omitted)).

¶ 38. To put this type of Rule 60(b)(3) motion in context, if a spouse represents to the court that he is in excellent health and that he expects to receive military retirement benefits, while at the same time he is secretly applying for disability benefits, these actions could be characterized as fraudulent, and if proven by clear and convincing evidence, could justify vacating a property settlement. Indeed, and as evidenced by the settlement here, because a property distribution is often also the basis for other awards, including amounts awarded in spousal support, a fraudulent misrepresentation as to pension assets could upset the equity of the entire settlement.

¶ 39. Moreover, though a court may not divide the portion of a military retiree's benefits waived in favor of disability benefits, it may take into account this waiver as an equitable consideration in fashioning a fair settlement agreement. See *Repash v. Repash*, 148 Vt. 70, 72-73, 528 A.2d 744, 745 (1987) (concluding that though attaching, levying, or seizing a retiree's veterans' disability benefits is strictly prohibited by federal law, such benefits "may be considered for alimony or spousal maintenance payments"); see also *Davis v. Davis*, 777 S.W.2d 230, 232 (Ky. 1989) (concluding that though courts are prohibited from dividing veterans' disability benefits as marital property, "if an inequity arises in an individual case, the trial court can resolve the problem . . . by making an appropriate award of spousal support and/or marital property"); *White v. White*, 568 S.E.2d 283, 286 (N.C. Ct. App. 2002) ("[N]either *Mansell* nor the FSPA prohibits a state court from considering a former spouse's federal disability payments (replacing a corresponding amount of retired pay) when configuring the

distribution of marital property upon divorce."); *Rothwell v. Rothwell*, 775 S.W.2d 888, 891 (Tex. App. 1989) (finding no error where husband's veterans' disability benefit was considered in dividing income between the spouses, but no disability benefit was actually awarded to wife); cf. *Depot v. Depot*, 2006 ME 25, ¶ 15, 893 A.2d 995 (despite federal law prohibiting Social Security disability benefits from being considered marital property for distribution purposes at divorce, "[n]either the letter nor purpose of [federal law prohibiting attachment of Social Security benefits] compel courts to ignore expected annual Social Security benefit payments when undertaking their responsibility to equitably divide marital property"); *Mahoney v. Mahoney*, 681 N.E.2d 852, 856 (Mass. 1997) (noting that though Social Security old age benefits may not be included as part of the marital estate, "a judge may consider a spouse's anticipated Social Security benefits as one factor, among others, in making an equitable distribution of the distributable marital assets").

¶ 40. Failing to remedy a property distribution secured by fraudulent representations as to a party's plans to apply for disability benefits allows a military retiree to use the illusive potential of retirement benefits to secure a windfall when he converts such retirement benefits to disability benefits at the earliest opportunity. Allowing a party to a divorce to prevail on such a scheme sets up the nonmilitary spouse for financial hardship. The same purpose underlying the USFSPA — protection of military spouses who have sacrificed careers in the mainstream economy in support of their spouses' military careers — dictates that courts take care to ensure that a divorce proceeding that includes distribution of military retirement benefits is not based on fraud.