2015 VT 68

## Citimortgage, Inc. v. Ronald J. Dusablon, Jr., Joan V. Dusablon and Horizon Heights Condominium Association

[122 A.3d 1202]

No. 14-012

Present: **Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Morris, Supr. J. (Ret.), Specially Assigned**

Opinion Filed April 17, 2015

284

*Douglas K. Riley* and *Merideth C. Chaudoir* of *Lisman Leckering, P.C.*, Burlington, for Plaintiff-Appellant Horizon Heights Condominium Association.

*Ronald J. Dusablon, Jr.* and *Joan V. Dusablon*, Pro Ses, South Burlington, Defendants-Appellees.

¶ 1. **Skoglund, J.** Appellant Horizon Heights Condominium Association seeks to recover from joint condominium owners Ronald J. Dusablon, Jr. and Joan V. Dusablon monthly dues that accrued after the Dusablons redeemed their foreclosed-upon condominium. At the bottom of procedural muck lies the principal question of this case: whether a condominium owners' association may collect from a pair of owners monthly assessments that accrued in between the end of the date range stated in an agreement that formed the basis of a foreclosure judgment as

between those parties, and the date on which that judgment was entered. We hold that an association may recover these debts because they were not covered by the prior agreement or its attendant foreclosure judgment. Owners who continue to live in their condominiums and reap the association's services may not use an old foreclosure decree as a shield to avoid paying subsequent monthly assessments.[*]

¶ 2. The following facts are undisputed. The Association's authority relevant to this appeal is defined by Title 27A, the Vermont Common Interest Ownership Act, and its declaration, bylaws, rules, and regulations. The Dusablons purchased the Horizon Heights unit in question in February 1994 with a mortgage and have continued to reside there through the filing date of this appeal. The Dusablons agreed to be bound by the Association's governing documents when they purchased their unit. They receive certain services provided by the Association, for which Horizon Heights unit owners are obligated to pay monthly assessments, pursuant to the Association's bylaws.

¶ 3. This case began when Citimortgage, Inc., the mortgagee of the Dusablons' condominium, filed a foreclosure action against them and the Association on March 2, 2010. On March 29, 2010, the Association filed a cross-claim against the Dusablons, seeking to foreclose its statutory lien for monthly assessments. See 12 V.S.A. ch. 172; V.R.C.P. 80.1. After various motions and procedures irrelevant to this appeal, the Association and the Dusablons executed an accounting stipulation to establish an agreed-upon sum, which, once incorporated into a foreclosure decree and timely paid, would allow the Dusablons to redeem their property with respect to the Association's lien. The stipulation referenced, and the parties approved, an affidavit of the Association as to the amount owed by the Dusablons as of January 3, 2012 — $19,667.21. The stipulation said nothing regarding assessments accruing after that date.

¶ 4. The parties submitted the stipulation to the court on March 20, 2012. On February 15, 2013, the civil division issued a judgment order and decree of foreclosure on cross-claim, which

---

[*] The Dusablons argue in their brief that they should not have to pay the assessments in question because the Association performed its services poorly. The quality of the Association's work, however, is immaterial to the question before us, and the Dusablons neither cross-appealed nor raised this issue below. We will not consider it.

adopted the stipulated calculation of assessments accruing through January 3, 2012, and which ordered the Dusablons to pay $19,952.99 plus interest by April 16, 2013 to redeem the property from foreclosure by the Association. The $285.78 difference between the stipulated amount and the amount in the decree reflects court costs and service fees. The Dusablons paid the required sum on April 5, 2013, and the court issued them a certificate of cross-claim redemption on the same day.

¶ 5. On April 10, 2013, the Association billed the Dusablons for overdue monthly assessments that had accrued since January 3, 2012, the last date covered by the accounting affidavit and stipulation. The Dusablons refused to pay the bill and instead filed a motion to enforce judgment order and decree of foreclosure on cross-claim. The Association opposed that motion, and the court heard oral argument on July 16, 2013. The court ruled from the bench that "the Judgment of 2/15/13 precludes the Association from pursuing any claim for assessments, etc. arising before that date, but does not preclude any claim for assessments arising after that date."

¶ 6. The Association moved for reconsideration of the court's July 16, 2013 decision, but the court denied its request, explaining that res judicata barred the Association from relitigating the amount of the judgment. The court also denied the Association's subsequent motion for permission to appeal, stating that it was untimely. The Association then appealed both of those denials as well as the July 16, 2013 decision to this Court, but we denied the appeal, finding there had been no final judgment pursuant to Vermont Rule of Civil Procedure 54(b) with respect to Citimortgage's complaint and therefore the appeal was premature. Once the trial court dismissed Citimortgage's complaint, the Association again filed notice of appeal to this Court. Citimortgage did not contest that dismissal and is not a party to this appeal.

¶ 7. The Association now raises the same challenges as it did in its first appeal: that the trial court erred in denying its motions to reconsider and for permission to appeal, and in granting the Dusablons' motion to enforce judgment order. The arguments regarding reconsideration and permission to appeal were rendered moot by our decision — in the entry order denying the Association's first appeal — that neither the trial court's February 15, 2013 judgment order, nor the court's July 16, 2013 order interpreting it, was a final judgment. The Association timely filed its

current appeal of those interlocutory orders after the trial court entered a final judgment, months later, so we turn now to the court's interpretation of the Dusablons' motion to enforce judgment order.

¶ 8. ■ In that motion, the Dusablons essentially sought a ruling from the court that the February 15, 2013 judgment order covered monthly assessments accruing from January 2012 to February 2013, and, alternatively, argued that the Association should be barred from collecting those assessments under the doctrines of waiver, equitable estoppel, or laches. Motions to enforce judgment, while not specifically addressed by our civil rules, are not novel. Unfortunately, motions for enforcement have fallen into a procedural blender with Rule 60 motions for modification or clarification, as our trial courts have previously treated a motion requesting modification as one for enforcement, and vice versa. See, e.g., *Richard v. Richard*, 2014 VT 58, ¶ 5, 196 Vt. 531, 99 A.3d 193 (trial court treating motion for enforcement as motion for clarification); *Youngbluth v. Youngbluth*, 2010 VT 40, ¶ 10, 188 Vt. 53, 6 A.3d 677 (trial court treating motion for modification as motion for enforcement). Rule 60 motions are appropriate only with respect to final judgments, though, and the February 15, 2013 judgment order was not a final judgment.

¶ 9. ■ Moreover, the Association had not sued the Dusablons to collect the monthly assessments accruing from January 2012 to February 2013. It simply billed them for the amounts owed. For those reasons, the Dusablons' motion is more accurately characterized either as a motion for clarification of an interlocutory order, pursuant to Rule 54(b), or an out-of-place request for injunctive relief or declaratory judgment, and not a motion to enforce. The trial court apparently treated the motion as one for clarification, cf. *Richard*, 2014 VT 58, ¶ 5, and proceeded to interpret its prior judgment order by way of a new explanatory order.

¶ 10. While the court has discretion to revise interlocutory orders, V.R.C.P. 54(b), we review a trial court's interpretation of its own previous orders de novo. *Youngbluth*, 2010 VT 40, ¶ 8.

¶ 11. ■ The trial court incorrectly held that its February 15, 2013 judgment order precluded the Association from pursuing assessments arising before that date because it misinterpreted the scope of that order. In interpreting a prior trial-court order, we

look first to its plain language. See *id.* ¶ 9. Here, the express language of the order clearly defines its scope. The accounting section of the order states the principal, immediately followed by "[l]ate charges through January 1, 2012." Underneath the "TOTAL DUE" line, the order indicates that interest will accrue "from January 1, 2012 to the date of redemption."

¶ 12. The stipulation that formed the basis of the court's accounting, moreover, states that the agreed-upon sum represented "the Dusablons' account with the Association as of January 3, 2012." The stipulation was signed by both parties on March 20, 2012 and submitted to the court on the same day. For whatever reason, the court reviewed that stipulation and adopted the parties' stipulated accounting into its judgment order, but waited nearly a year to do so. The delay had no effect on the plain language of its order or the stipulation on which that order was based and bears no relation to the range of months that the accounting encompasses. The order applies to monthly assessments that accrued through January 1, 2012, but not to subsequently accruing dues.

¶ 13. ██ ██ Because the trial court misread the earlier judgment order, its conclusion that the Association is barred by res judicata from pursuing assessments that accrued prior to February 15, 2013 cannot stand. The claim-preclusion doctrine — the form of res judicata used by the trial court — provides that "a final judgment in previous litigation bars subsequent litigation if the parties, subject matter, and cause(s) of action in both matters are the same or substantially identical." *Faulkner v. Caledonia Cnty. Fair Ass'n*, 2004 VT 123, ¶ 8, 178 Vt. 51, 869 A.2d 103. Here, the Association never sued the Dusablons on the billed overdue monthly assessments, so those assessments had never been before the trial court until the Dusablons filed their motion to enforce judgment. The parties never litigated those assessments, and therefore res judicata could not have applied to preclude the Association from seeking to recover them.

*Reversed. The July 16, 2013 order granting the Dusablons' motion to enforce judgment order and decree of foreclosure on cross-claim is vacated. The judgment order and decree of foreclosure remains valid with respect to the Dusablons' account as of January 1, 2012.*