2015 VT 68











 

Citimortgage,
Inc. v. Dusablon and Horizon Heights Condominium
Association (2014-012)

 

2015 VT 68

 

[Filed 17-Apr 2015]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 
 
 2015 VT 68
 
 


 


 
 
 No. 2014-012
 
 


 


 
 
 Citimortgage,
 Inc.
 
 
 Supreme Court
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
 On Appeal from
 
 
 
 
      v.
 
 
 Superior Court, Chittenden
 Unit,
 
 
 
 
  
 
 
 Civil Division
 
 
 
 
  
 
 
  
 
 
 
 
 Ronald J. Dusablon,
 Jr., Joan V. Dusablon and 
 Horizon Heights Condominium Association
 
 
 October Term, 2014
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 
 
 Dennis
 R. Pearson, J.
 
 
 
 
  
 
 


Douglas K. Riley and Merideth C. Chaudoir of Lisman Leckering, P.C., Burlington, for

  Plaintiff-Appellant Horizon Heights
Condominium Association.

 

Ronald J. Dusablon, Jr. and Joan
V. Dusablon, Pro Ses, South Burlington, Defendants-Appellees.

 

 

PRESENT:    Reiber, C.J., Dooley, Skoglund and
Robinson, JJ., and Morris, Supr. J. (Ret.),

                    
Specially Assigned

 

 

¶ 1.            
SKOGLUND, J.   Appellant Horizon Heights Condominium
Association seeks to recover from joint condominium owners Ronald J. Dusablon, Jr. and Joan V. Dusablon
monthly dues that accrued after the Dusablons
redeemed their foreclosed-upon condominium.  At the bottom of procedural
muck lies the principal question of this case: whether a condominium owners’
association may collect from a pair of owners monthly assessments that accrued
in between the end of the date range stated in an agreement that formed the
basis of a foreclosure judgment as between those parties, and the date on which
that judgment was entered.  We hold that an association may recover these
debts because they were not covered by the prior agreement or its attendant
foreclosure judgment.  Owners who continue to live in their condominiums
and reap the association’s services may not use an old foreclosure decree as a
shield to avoid paying subsequent monthly assessments.*

¶ 2.            
The following facts are undisputed.  The Association’s authority
relevant to this appeal is defined by Title 27A, the Vermont Common Interest
Ownership Act, and its declaration, bylaws, rules, and regulations.  The Dusablons purchased the Horizon Heights unit in question in
February 1994 with a mortgage and have continued to reside there through the
filing date of this appeal.  The Dusablons
agreed to be bound by the Association’s governing documents when they purchased
their unit.  They receive certain services provided by the Association,
for which Horizon Heights unit owners are obligated to
pay monthly assessments, pursuant to the Association’s bylaws.

¶ 3.            
This case began when Citimortgage, Inc., the
mortgagee of the Dusablons’ condominium, filed a
foreclosure action against them and the Association on March 2, 2010.  On
March 29, 2010, the Association filed a cross-claim against the Dusablons, seeking to foreclose its statutory lien for
monthly assessments.  See 12 V.S.A. ch.
172; V.R.C.P. 80.1.  After various motions and procedures
irrelevant to this appeal, the Association and the Dusablons
executed an accounting stipulation to establish an agreed-upon sum, which, once
incorporated into a foreclosure decree and timely paid, would allow the Dusablons to redeem their property with respect to the
Association’s lien.  The stipulation referenced, and the parties approved,
an affidavit of the Association as to the amount owed by the Dusablons as of January 3, 2012—$19,667.21.  The
stipulation said nothing regarding assessments accruing after that date.  

¶ 4.            
The parties submitted the stipulation to the court on March 20,
2012.  On February 15, 2013, the civil division issued a judgment order
and decree of foreclosure on cross-claim, which adopted the stipulated
calculation of assessments accruing through January 3, 2012, and which ordered
the Dusablons to pay $19,952.99 plus interest by
April 16, 2013 to redeem the property from foreclosure by the Association. 
The $285.78 difference between the stipulated amount and the amount in the
decree reflects court costs and service fees.  The Dusablons
paid the required sum on April 5, 2013 and the court issued them a certificate
of cross-claim redemption on the same day.  

¶ 5.            
On April 10, 2013, the Association billed the Dusablons
for overdue monthly assessments that had accrued since January 3, 2012, the
last date covered by the accounting affidavit and stipulation.  The Dusablons refused to pay the bill and instead filed a
motion to enforce judgment order and decree of foreclosure on
cross-claim.  The Association opposed that motion, and the court heard
oral argument on July 16, 2013.  The court ruled from the bench that “the
Judgment of 2/15/13 precludes the Association from pursuing any claim for
assessments, etc. arising before that date, but does not preclude any claim for
assessments arising after that date.”  

¶ 6.            
The Association moved for reconsideration of the court’s July 16, 2013
decision, but the court denied its request, explaining that res judicata barred
the Association from relitigating the amount of the
judgment.  The court also denied the Association’s subsequent motion for
permission to appeal, stating that it was untimely.  The Association then
appealed both of those denials as well as the July 16, 2013 decision to this
Court, but we denied the appeal, finding there had been no final judgment
pursuant to Vermont Rule of Civil Procedure 54(b) with respect to Citimortgage’s complaint and therefore the appeal was
premature.  Once the trial court dismissed Citimortgage’s
complaint, the Association again filed notice of appeal to this Court.  Citimortgage did not contest that dismissal and is not a
party to this appeal.  

¶ 7.            
The Association now raises the same challenges as it did in its first
appeal: that the trial court erred in denying its motions to reconsider and for
permission to appeal, and in granting the Dusablons’
motion to enforce judgment order.  The arguments regarding reconsideration
and permission to appeal were rendered moot by our decision—in the entry order
denying the Association’s first appeal—that neither the trial court’s February
15, 2013 judgment order, nor the court’s July 16, 2013 order interpreting it,
was a final judgment.  The Association timely filed its current appeal of
those interlocutory orders after the trial court entered a final judgment,
months later, so we turn now to the court’s interpretation of the Dusablons’ motion to enforce judgment order.  

¶ 8.            
In that motion, the Dusablons essentially
sought a ruling from the court that the February 15, 2013 Judgment Order
covered monthly assessments accruing from January 2012 to February 2013, and,
alternatively, argued that the Association should be barred from collecting
those assessments under the doctrines of waiver, equitable estoppel, or
laches.  Motions to enforce judgment, while not specifically addressed by
our Civil Rules, are not novel.  Unfortunately, motions for enforcement
have fallen into a procedural blender with Rule 60 motions for modification or
clarification, as our trial courts have previously treated a motion requesting
modification as one for enforcement, and vice versa.  See, e.g., Richard
v. Richard, 2014 VT 58, ¶ 5, ___ Vt. ___, 99 A.3d 193 (trial court
treating motion for enforcement as motion for clarification); Youngbluth v. Youngbluth,
2010 VT 40, ¶ 10, 188 Vt. 53, 6 A.3d 677 (trial court treating motion for
modification as motion for enforcement).  Rule 60 motions are appropriate
only with respect to final judgments, though, and the February 15, 2013
judgment order was not a final judgment.  

¶ 9.            
Moreover, the Association had not sued the Dusablons
to collect the monthly assessments accruing from January 2012 to February
2013.  It simply billed them for the amounts owed.  For those
reasons, the Dusablons’ motion is more accurately
characterized either as a motion for clarification of an interlocutory order,
pursuant to Rule 54(b), or an out-of-place request for injunctive relief or
declaratory judgment, and not a motion to enforce.  The trial court apparently treated the motion as one for
clarification, cf. Richard, 2014 VT 58, ¶ 5, and proceeded to
interpret its prior judgment order by way of a new explanatory order.

¶ 10.         While
the court has discretion to revise interlocutory orders, V.R.C.P. 54(b), we
review a trial court’s interpretation of its own previous orders de novo. 
Youngbluth, 2010 VT 40, ¶ 8.

¶ 11.         The
trial court incorrectly held that its February 15, 2013 judgment order
precluded the Association from pursuing assessments arising before that date
because it misinterpreted the scope of that order.  In interpreting a
prior trial-court order, we look first to its plain language.  See id.
¶ 9.  Here, the express language of the
order clearly defines its scope.  The accounting section of the order
states the principal, immediately followed by “[l]ate charges through January
1, 2012.”  Underneath the “TOTAL DUE” line, the order indicates that
interest will accrue “from January 1, 2012 to the date of redemption.”  

¶ 12.         The
stipulation that formed the basis of the court’s accounting, moreover, states
that the agreed-upon sum represented the “the Dusablons’
account with the Association as of January 3, 2012.”  The stipulation was
signed by both parties on March 20, 2012 and submitted to the court on the same
day.  For whatever reason, the court reviewed that stipulation and adopted
the parties’ stipulated accounting into its judgment order, but waited nearly a
year to do so.  The delay had no effect on the plain language of its order
or the stipulation on which that order was based and bears no relation to the
range of months that the accounting encompasses.  The order applies to
monthly assessments that accrued through January 1, 2012, but not to
subsequently accruing dues.

¶ 13.         Because
the trial court misread the earlier judgment order, its conclusion that the
Association is barred by res judicata from pursuing assessments that accrued
prior to February 15, 2013 cannot stand.  The claim-preclusion
doctrine—the form of res judicata used by the trial court—provides that “a
final judgment in previous litigation bars subsequent litigation if the
parties, subject matter, and cause(s) of action in both matters are the same or
substantially identical.”  Faulkner v. Caledonia Cnty. Fair Ass’n,
2004 VT 123, ¶ 8, 178 Vt. 51, 869 A.2d 103. 
Here, the Association never sued the Dusablons on the
billed overdue monthly assessments, so those assessments had never been before
the trial court until the Dusablons filed their
motion to enforce judgment.  The parties never litigated those
assessments, and therefore res judicata could not have applied to preclude the
Association from seeking to recover them.

Reversed. 
The July 16, 2013 order granting the Dusablons’
motion to enforce judgment order and decree of foreclosure on cross-claim is
vacated.  The judgment order and decree of foreclosure remains valid with
respect to the Dusablons’ account as of January 1,
2012.

 

 

 


 
 
  
 
 
  
 
 
 FOR THE COURT:
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Associate
 Justice
 
 


 














*  The Dusablons argue in their brief that they should not have to
pay the assessments in question because the Association performed its services
poorly.  The quality of the Association’s work, however, is immaterial to
the question before us, and the Dusablons neither
cross-appealed nor raised this issue below.  We will not consider it.