SHARON G. HALSTEAD, PLAINTIFF v. ROBERT W. HALSTEAD, DEFENDANT

No. COA03-1020

(Filed 1 June 2004)

**Divorce— equitable distribution—military retirement benefits—disability**

The trial court erred in an equitable distribution case by awarding plaintiff wife a larger percentage of defendant husband's military retirement benefits based on the fact that defendant elected to receive disability pay in lieu of a portion of his retirement pay, because: (1) the Uniformed Services Former Spouses' Protection Act does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans disability benefits, 10 U.S.C. § 1408; (2) the trial court could not substitute its own definition of military retired pay in lieu of the definition of disposable retirement pay as defined by Congress since federal law governs state action regarding military retirement pay or disability benefits; and (3) the order requiring defendant to pay his former wife any amount withheld from her share of defendant's military retirement due to future reductions caused by an act or omission, including future waivers of retirement pay, contravenes 38 U.S.C. § 5301.

Appeal by defendant from order entered 2 April 2003 by Judge C. Christopher Bean, District Court, Pasquotank County. Heard in the Court of Appeals 27 April 2004.

*The Twiford Law Firm, P.C., by Edward A. O'Neal, for plaintiff.*

*Frank P. Hiner, IV, for defendant*

WYNN, Judge.

Defendant, Robert W. Halstead, appeals the trial court's equitable distribution order awarding Plaintiff, Sharon G. Halstead, an unequal distribution of marital assets contending the trial court erroneously awarded Plaintiff a larger percentage of his military retirement benefits in contravention of federal law. We agree and reverse the order below.

Defendant entered military service on 24 April 1967 and married Plaintiff on 4 October 1969. Twenty-six years later, the parties separated on 26 February 1996. The following year, Defendant retired from the military on 1 May 1997.

Due to a service-related disability, Defendant received military disability benefits. Federal law, however, precludes the receipt of military disability benefits and military retirement benefits; thus, Defendant elected to waive a portion of his military retirement pay in order to receive military disability pay. Nonetheless, in this case, because Defendant elected to receive disability pay in lieu of retirement benefits, the trial court concluded:

> Since the amount of disability rating is deducted from retirement benefits dollar for dollar, Plaintiff will be effectively deprived of her marital share (44%) of total monthly retirement benefits due to reclassification of retirement benefits to disability benefits. Therefore, the percentage of retirement payable to Plaintiff should be increased and the percentage payable to Defendant should be decreased to account for the partial disability deduction payment made to the Defendant.

From that conclusion, Defendant appeals.

---

On appeal, Defendant argues the trial court erroneously (I) defined military retired pay; (II) awarded Plaintiff an increased percentage of Defendant's military retirement; and (III) assigned any future disability pay to Plaintiff in direct proportion to the unequal share she received pursuant to the trial court's order in contravention of 10 U.S.C. § 1408 and 38 U.S.C. § 5301 et seq. We agree.

In *McCarty v. McCarty*, 453 U.S. 210, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981), the United States Supreme Court held that upon dissolu-

tion of a marriage, federal law precluded a state court from dividing military non-disability retired pay pursuant to state community property laws. In direct response to the *McCarty* decision, the United States Congress enacted the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408, "which authorizes state courts to treat 'disposable retired or retainer pay' as community property." *Mansell v. Mansell*, 490 U.S. 581, 584, 109 S. Ct. 2023, 2026, 104 L. Ed. 2d 675, 682 (1989).[1] "Because pre-existing federal law, . . ., completely pre-empted the application of state community property law to military retirement pay, Congress could overcome the *McCarty* decision only by enacting an affirmative grant of authority giving the States the power to treat military retirement pay as community property." *Mansell*, 490 U.S. at 588, 109 S. Ct. at 2028, 104 L. Ed. 2d at 684. Thus, Congress sought to change the legal landscape created by the *McCarty* decision by enacting the Uniformed Services Former Spouses' Protection Act. *Mansell*, 490 U.S. at 587, 109 S. Ct. at 2028, 104 L. Ed. 2d at 684.

Under the Uniformed Services Former Spouses' Protection Act, state courts are permitted to "treat 'disposable retired or retainer pay' of a military retiree as marital property. However, because military disability payments are not included within the definition of 'disposable retired or retainer pay,' such disability payments cannot be classified as marital property subject to distribution under state equitable distribution laws." *Bishop v. Bishop*, 113 N.C. App. 725, 733, 440 S.E.2d 591, 597 (1994).

In this case, the trial court did not classify Defendant's military disability payments as marital property. Indeed, in Finding of Fact 8, the trial court deducted Defendant's Veterans Administration disability payment from his gross retirement pay in determining Defendant's disposable retirement income. However, the trial court then found:

A portion of Defendant's gross monthly retirement benefits, currently in the total amount of $3,366.00, of which 88% is considered marital, has been reclassified since [date of separation] to disability benefits. Plaintiff is not entitled by law to any portion of the disability benefits (currently $633.00 per month). Since the amount of disability rating is deducted from retirement benefits dollar for dollar, Plaintiff will be effectively deprived of her mari-

---

1. The Court in *Mansell* indicated "the language of Uniformed Services Former Spouses' Protection Act covers both community property and equitable distribution States, as does our decision today." *Mansell*, 490 U.S. at 584, 109 S. Ct. at 2026, 104 L. Ed. 2d at 682.

tal share (44%) of total monthly retirement benefits due to reclassification of retirement benefits to disability benefits. Therefore, the percentage of retirement payable to Plaintiff should be increased and the percentage payable to Defendant should be decreased to account for the partial disability deduction payment made to the Defendant.

Although Defendant acknowledges that in North Carolina, the payment of disability benefits must be treated as a distributional factor when making an equitable distribution between the parties, he argues that "when the payment of disability benefits is the only factor a court considers in providing an unequal distribution of a military retirement and a judge treats the disability benefits by providing a dollar for dollar compensation to the non-military spouse, the disability payments become less a factor and more an acknowledgment that the non-military spouse has an ownership interest in both the military retirement and the disability payments." We are persuaded by his argument to agree.

Due to federal preemption, the application of state equitable distribution laws to military retirement and military disability pay is limited to those areas in which Congress has authorized state action. *See Mansell*, 490 U.S. 581, 109 S. Ct. 2023, 104 L. Ed. 2d 675 (1989). The Uniformed Services Former Spouses' Protection Act "does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans disability benefits." *Mansell*, 490 U.S. at 594-95, 109 S. Ct. at 2032, 104 L. Ed. 2d at 689. Although the trial court in this case deducted Defendant's veterans' disability benefits from his gross military retirement pay, it then circumvented the mandates of 10 U.S.C. § 1408 by increasing Plaintiff's share of Defendant's military retirement based solely upon Defendant's election to waive a portion of his military retirement pay based upon the amount of his disability benefits. Indeed, the trial court's order explicitly states that the reason for increasing Plaintiff's share arose from Defendant's election to receive disability benefits in lieu of retirement pay. Such an attempt to circumvent the mandates of 10 U.S.C. § 1408 can not be sanctioned by this Court.[2]

In North Carolina, military disability payments are treated as a distributional factor. *Bishop v. Bishop*, 113 N.C. App. 725, 734, 440

---

2. Although the trial court concluded an unequal distribution in favor of Mrs. Halstead was equitable, Mr. Halstead's share of the marital estate was $395,136.57 and Mrs. Halstead's share was $369,596.95.

S.E.2d 591, 597 (1994); *see also White v. White*, 152 N.C. App. 588, 594, 568 S.E.2d 283, 286 (2002). Similar to North Carolina, the Supreme Court of Alaska has held the federal law did not preclude the consideration of the economic consequences of a decision to waive military retirement pay in order to receive disability pay in determining the equitable distribution of marital assets. In addressing an issue somewhat similar to the one in this case, the Alaska Supreme Court explained:

> We are aware of the risk that our holding today might lead trial courts to simply shift an amount of property equivalent to the waived retirement pay from the military spouse's side of the ledger to the other spouse's side. This is unacceptable. In arriving at an equitable distribution of marital assets, courts should only consider a party's military disability benefits as they affect the financial circumstances of both parties. Disability benefits should not, either in form or substance, be treated as marital property subject to division upon the dissolution of marriage.

> This is, however, precisely what happened in the case before us. The trial court's modification order simply replaced direct federal garnishment of [the husband's] retirement benefits with a state order to pay. The trial judge even ordered that increases in [the husband's] retirement pay be passed on to [the wife] without any apparent recognition that James no longer has any retirement pay. The court was clearly trying to regain the status quo as if the *Mansell* decision did not exist. The effect of the order was to divide retirement benefits that have been waived to receive disability benefits in direct contravention of the holding in Mansell. This simply cannot be done under the Supremacy Clause of the federal constitution.

*Clauson v. Clauson*, 831 P.2d 1257, 1264 (Alaska 1992). Likewise, in this case, the trial court acknowledged federal law allowed Defendant to waive retirement benefits in order to receive disability benefits and precluded the division of the disability benefits as marital property. Therefore, the trial court accounted for the reduction in retirement income by increasing Plaintiff's share of the disposable retirement income. We hold that the trial court's order contravened federal law.

Defendant also contends the trial court erroneously defined military retirement pay in Conclusion of Law 8, which in pertinent part states:

HALSTEAD v. HALSTEAD

[164 N.C. App. 543 (2004)]

It is intended that the Plaintiff shall receive her full share of the Defendant's military retired pay as set out herein and without further reduction for civil service income, disability pay or any other reason. Military retired pay is deemed by the Court to include:

a. Retired pay actually paid or to which the Defendant would be entitled based on the length of service of his active duty or reserve service;

b. All payments paid or payable pursuant to Chapter 38 or Chapter 61, Title 10, UPS Code, before any statutory, regulatory or elective deductions are applied.

c. All amounts of retired pay waived or forfeited in any manner and for any reason or purpose including any amounts waived to qualify for VA benefits or forfeiture due to the misconduct of the Defendant.

Pursuant to 10 U.S.C. § 1408(c)(1), a court may treat disposable retired pay "either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." The provision defines "disposable retired pay" as "the total monthly retired pay to which a member is entitled less amounts which— . . . (B) are deducted from the retired pay of such member as a result of forfeitures of retired pay ordered by a court martial or as a result of a waiver of retired pay required by law in order to receive compensation under title 5 or title 38." 10 U.S.C. § 1408(a)(4)(B). Subsection 4(C) addresses the deduction of retirement benefits authorized under Chapter 61 by allowing a percentage of such benefits to be deducted from a member's total monthly retired pay in order to determine the disposable retired pay.

As noted earlier, federal preemption limits state action regarding military retirement pay and military disability pay to those actions authorized by Congress. Thus, the trial court could not substitute its own definition of military retired pay in lieu of the definition of disposable retirement pay as defined by the Congress.

Finally, Defendant argues the trial court erroneously assigned, dollar-for-dollar, any future diminution in the military retirement based upon reclassification of further amounts of retirement pay as disability pay in contravention of 10 U.S.C. § 1408 and 38 U.S.C. § 5301 et seq.

**HALSTEAD v. HALSTEAD**

[164 N.C. App. 543 (2004)]

Under 38 U.S.C. § 5301,

payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.

In its decree, the trial court ordered:

6. If there is a diminution deduction or cessation of the amounts paid to the Plaintiff pursuant to the next preceding paragraph, and any cost of living increases subsequent to the date that the first payment to the Plaintiff is due and payable pursuant to this order, due to an act or omission of the Defendant, the Defendant shall personally pay to the Plaintiff through the Office of the Clerk of Superior Court of Pasquotank County that amount not paid directly to her by the Defendant Finance and Accounting Service and the Defendant is designated as a constructive trustee in that regard.

7. If the Defendant receives disability pay or civil service income and this event causes a reduction of the Defendant's disposable retired pay from the amount set out herein, thus reducing the Plaintiff's share thereof, the Defendant will pay to the Plaintiff through the Office of the Clerk of Superior Court of Pasquotank County each month any amount that is withheld from Plaintiff's share of the Defendant's military retirement for the above reasons. The monthly payments herein shall be paid to the Plaintiff regardless of her marital status and shall not end at remarriage.

We hold that the order requiring Defendant to pay his former wife any amount withheld from her share of Defendant's military retirement due to future reductions caused by an act or omission, including future waivers of retirement pay, contravenes 38 U.S.C. § 5301 (precluding "attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.").

The policy underlying our holding was well stated by the United States Supreme Court in *Mansell*: "Veterans who became disabled as

a result of military service are eligible for disability benefits . . . calculated according to the seriousness of the disability and the degree to which the veteran's ability to earn a living has been impaired. . . . In order to prevent double dipping, a military retiree may receive disability benefits only to the extent that he waives a corresponding amount of his military retirement pay. Because disability benefits are exempt from federal, state, and local taxation, military retirees who waive their retirement pay in favor of disability benefits increase their after-tax income. Not surprisingly, waivers of retirement pay are common." *Mansell*, 490 U.S. at 583-84, 109 S. Ct. at 2026, 104 L. Ed. 2d at 681-82.

In sum, the trial court's order awarding Plaintiff a greater percentage of Defendant's disposable retirement pay because Defendant elected to receive disability pay in lieu of a portion of his retirement pay contravenes 10 U.S.C. § 1408. Furthermore, the order requiring Defendant to pay Plaintiff any amounts withheld from her share of his retirement due to future elections or any acts or omissions on his part causing a reduction in disposable retirement pay violates 38 U.S.C. § 5301 et seq. Finally, as federal law governs state action regarding military retirement pay or disability benefits, the trial court could not substitute its own definition for disposable retirement pay. Accordingly, the trial court's order is reversed and this cause is remanded for a new equitable distribution hearing.

Reversed and remanded.

Judges CALABRIA and STEELMAN concur.