DAVIS, Judge.
 

 The primary issue in this appeal is whether federal law prohibits a veteran's military disability benefits from being considered as income for purposes of satisfying a distributive award to his former spouse pursuant to an equitable distribution order. Timothy Lesh ("Mr. Lesh") appeals on federal preemption grounds from the trial court's order denying his motion pursuant to Rule 60(b) of the North Carolina Rules of Civil Procedure
 
 *893
 
 to set aside a portion of the parties' equitable distribution order and holding him in civil contempt for failing to make payments required under that order. Because we conclude that federal law does not preclude the treatment of his disability payments as income for this purpose, we affirm.
 

 Factual and Procedural Background
 

 Mr. Lesh was married to Margaret S. Lesh ("Ms. Lesh") on 14 October 1989. On 1 December 2012, the parties separated, and they divorced on 16 September 2014. On 1 August 2014, Mr. Lesh filed a complaint for absolute divorce in Currituck County District Court. Ms. Lesh filed an answer and counterclaim on 27 August 2014, seeking post-separation support, alimony, and equitable distribution of the parties' marital property.
 

 On 22 and 23 February 2016, a hearing was held before the Honorable Meader W. Harriss, III. On 13 April 2016, the trial court entered an order (the "Equitable Distribution Order") distributing 75% of the marital estate to Mr. Lesh and 25% to Ms. Lesh. The court further concluded that "[i]n order for [Ms. Lesh] to receive her share of the net marital estate, it is necessary for [Mr. Lesh] to pay [Ms. Lesh] a distributive award in the sum of $31,590.59, which reflects her 25% of the estate minus the $3,010.00 value of the marital property hereby distributed to her and in her possession." The trial court ordered that this distributive award "be paid in monthly installments in the amount of $877.22, the first of which is due April 1, 2016 to continue to be due the first of the month every month until said sum is paid in full." The Equitable Distribution Order further permitted Mr. Lesh to "pay off the remaining balance of the lump sum at any time, in lieu of continuing monthly installment payments."
 

 On 11 May 2016, Mr. Lesh filed a notice of appeal from the Equitable Distribution Order. However, he dismissed his appeal on 28 July 2016. On 8 August 2016, Mr. Lesh filed a motion in the cause pursuant to Rule 60(b) seeking to set aside the portion of the Equitable Distribution Order requiring his monthly payments of the distributive award. In this motion, he contended that the Equitable Distribution Order was an "irregular" judgment because it would require him to use his military disability benefits to make the distributive award payments despite the fact that federal law preempted the trial court's ability to require him to do so.
 

 On 7 September 2016, Ms. Lesh filed a motion for contempt, requesting that the trial court hold Mr. Lesh in contempt for "fail[ing] and refus[ing] to comply with [the Equitable Distribution] Order in that [he] ha[d] not made any payments to [her] ... and his failure to comply [wa]s willful, without just cause or excuse." A hearing on Mr. Lesh's motion in the cause and Ms. Lesh's motion for civil contempt was held on 17 October 2016. On 27 January 2017, the trial court entered an order captioned "Amended
 
 [1]
 
 Order of Contempt" denying Mr. Lesh's motion under Rule 60(b) and granting Ms. Lesh's motion for civil contempt. Mr. Lesh filed a timely notice of appeal.
 

 Analysis
 

 On appeal, Mr. Lesh argues that the trial court erred by (1) denying his Rule 60(b) motion to set aside the portion of the Equitable Distribution Order requiring monthly distributive payments based on his contention that his only source of income is his military disability benefits, which under federal law cannot be distributed as divisible property; and (2) holding him in civil contempt for failing to make the monthly payments required by the Equitable Distribution Order. We address each argument in turn.
 

 I. Denial of Rule 60(b) Motion
 

 Mr. Lesh argues that the trial court erred by denying his motion under Rule 60(b)(6) because the Equitable Distribution Order was an irregular judgment. Specifically, he contends that the order was irregular because it required him to make monthly payments of the distributive award despite the trial court's awareness that the entirety of his monthly income was comprised of his military disability benefits.
 

 *894
 
 Ms. Lesh, conversely, contends that this portion of his appeal lacks merit due to the fact that he withdrew his appeal of the Equitable Distribution Order and therefore lost his right to challenge the validity of that order. She further contends that his motion in the cause was defective due to the fact that Rule 60(b)(6) cannot be used as a substitute for appeal.
 

 A. Applicability of Rule 60(b)(6)
 

 Rule 60(b) states, in pertinent part, as follows:
 

 (b)
 

 Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud, etc.
 

 -On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
 

 (1) Mistake, inadvertence, surprise, or excusable neglect;
 

 (2) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
 

 (3) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
 

 (4) The judgment is void;
 

 (5) The judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
 

 (6) Any other reason justifying relief from the operation of the judgment.
 

 N.C. R. Civ. P. 60(b).
 

 Rule 60(b)(6)"serves as a grand reservoir of equitable power by which a court may grant relief from a judgment whenever extraordinary circumstances exist and there is a showing that justice demands it."
 
 Dollar v. Tapp
 
 ,
 
 103 N.C. App. 162
 
 , 163-64,
 
 404 S.E.2d 482
 
 , 483 (1991) (citation and quotation marks omitted). We have held that "[a] party seeking to set aside an irregular judgment may properly do so by filing a motion for relief from judgment pursuant to Rule 60(b)(6)."
 
 Brown v. Cavit Scis., Inc.
 
 ,
 
 230 N.C. App. 460
 
 , 464,
 
 749 S.E.2d 904
 
 , 908 (2013) (citation omitted). "It is well settled, however, that Rule 60(b)(6) does not include relief from errors of law or erroneous judgments."
 
 Garrison ex rel. Chavis v. Barnes
 
 ,
 
 117 N.C. App. 206
 
 , 210,
 
 450 S.E.2d 554
 
 , 557 (1994) (internal citations omitted). "We review the denial of a motion pursuant to Rule 60(b)(6) for an abuse of discretion."
 
 Sharyn's Jewelers, LLC v. Ipayment, Inc.
 
 ,
 
 196 N.C. App. 281
 
 , 284,
 
 674 S.E.2d 732
 
 , 735 (2009) (citation omitted).
 

 Our Supreme Court has explained the distinction between irregular, erroneous, and void judgments as follows:
 

 A judgment may be valid, irregular, erroneous, or void. ... An irregular judgment is one rendered contrary to the course and practice of the court, as for example, at an improper time; or against an infant without a guardian; or by the court on an issue determinable by the jury; or where a plea in bar is undisposed of; or where the debt sued on has not matured; and in other similar cases (citing authorities). An erroneous judgment is one rendered according to the course and practice of the court, but contrary to law, or upon a mistaken view of the law, or upon an erroneous application of legal principles, as where, judgment is given for one party when it [should] have been given for another; or where the pleadings require several issues and only one is submitted; or where the undenied allegations of the complaint are not sufficient to warrant a recovery; and in other cases involving a mistake of law (citing authorities).... A void judgment is one that has semblance but lacks some essential element, as jurisdiction or service of process.
 

 Wynne v. Conrad
 
 ,
 
 220 N.C. 355
 
 , 359-60,
 
 17 S.E.2d 514
 
 , 518 (1941) (internal citations and quotation marks omitted).
 

 "The correct procedure for attacking a judgment is dependent upon the type of defect asserted."
 
 Burton v. Blanton
 
 ,
 
 107 N.C. App. 615
 
 , 616,
 
 421 S.E.2d 381
 
 , 383 (1992).
 

 The last subsection of Rule 60(b) authorizes the court to relieve a party from the
 
 *895
 
 operation of a judgment for any other reason not enumerated in the first five clauses. While Rule 60(b)(6) and the first five clauses of this rule are mutually exclusive, clause (6) should not be characterized as a catchall provision. Rule 60(b)(6) is not intended as substitute relief for reasons that would be deficient if asserted under one of the other five clauses,
 
 or where the facts would more appropriately support one of the five preceding clauses
 
 .
 

 G. Gray Wilson, North Carolina Civil Procedure § 60-11 (3d ed. 2007) (internal citations omitted and emphasis added);
 
 see also
 

 Norton v. Sawyer
 
 ,
 
 30 N.C. App. 420
 
 , 426,
 
 227 S.E.2d 148
 
 , 153 (" Rules 60(b)(1) and 60(b)(6) were mutually exclusive, so that any conduct which generally fell under the former could not stand as a ground for relief under the latter."),
 
 disc. review denied
 
 ,
 
 291 N.C. 176
 
 ,
 
 229 S.E.2d 689
 
 (1976).
 

 "A Rule 60(b)(4) motion is ... proper where a judgment is 'void' as that term is defined by the law."
 
 Burton
 
 ,
 
 107 N.C. App. at 616
 
 ,
 
 421 S.E.2d at 382
 
 . As noted above, "[a] judgment is void ... when the issuing court has no jurisdiction over the parties or subject matter in question or has no authority to render the judgment entered."
 

 Id.
 

 (citations omitted).
 

 In the present case, Mr. Lesh is erroneously invoking Rule 60(b)(6) to set aside, in part, a judgment that he is contending is
 
 void
 
 -based on his assertion that the trial court lacked the authority to order him to make distributive award payments from funds that are exempt from distribution under federal law. Such an argument would have been procedurally proper under Rule 60(b)
 
 (4)
 
 . However, he has failed to show that the Equitable Distribution Order was
 
 irregular
 
 and thus subject to being set aside under Rule 60(b)
 
 (6)
 
 .
 

 However, because Mr. Lesh's substantive argument is based on a recent United States Supreme Court case-
 
 Howell v. Howell
 
 , --- U.S. ----,
 
 137 S.Ct. 1400
 
 ,
 
 197 L.Ed.2d 781
 
 (2017) -that had not been decided at the time of the trial court's Equitable Distribution Order or its order denying his Rule 60(b) motion, we elect to exercise our discretion under Rule 21 of the North Carolina Rules of Appellate Procedure and treat his appeal as a petition for
 
 certiorari
 
 .
 
 See
 

 Zaliagiris v. Zaliagiris
 
 ,
 
 164 N.C. App. 602
 
 , 606,
 
 596 S.E.2d 285
 
 , 289 (2004) (treating appeal as a petition for writ of
 
 certiorari
 
 ),
 
 disc. review denied
 
 ,
 
 359 N.C. 643
 
 ,
 
 617 S.E.2d 662
 
 (2005) ;
 
 see also
 

 Hill v. StubHub, Inc.
 
 ,
 
 219 N.C. App. 227
 
 , 232,
 
 727 S.E.2d 550
 
 , 554 (2012) (granting
 
 certiorari
 
 where judicial review would promote judicial economy and appeal involved issues of first impression in North Carolina),
 
 disc. review denied
 
 ,
 
 366 N.C. 424
 
 ,
 
 736 S.E.2d 757
 
 (2013).
 

 B. Federal Preemption
 

 Mr. Lesh's argument is that the doctrine of federal preemption prohibits state courts from ordering persons receiving military disability benefits to make distributive payments to their former spouses where the trial court has reason to know that the funds used to make the distributive payments will include those benefits. In order to analyze Mr. Lesh's argument, it is helpful to review the federal statutes and applicable case law bearing on this issue.
 

 Pursuant to
 
 10 U.S.C. § 3911
 
 ,
 
 et seq.
 
 ,"[m]embers of the Armed Forces who serve for a specified period, generally at least 20 years, may retire with retired pay."
 
 Mansell v. Mansell
 
 ,
 
 490 U.S. 581
 
 , 583,
 
 109 S.Ct. 2023
 
 , 2025,
 
 104 L.Ed.2d 675
 
 , 681 (1989). The amount of retired pay a veteran is entitled to receive is calculated according to the number of years served and rank achieved.
 

 Id.
 

 In addition, pursuant to
 
 38 U.S.C. §§ 310
 
 and 311, "[v]eterans who became disabled as a result of military service are eligible for disability benefits[,]" which are calculated "according to the seriousness of the disability and the degree to which the veteran's ability to earn a living has been impaired."
 

 Id.
 

 at 583
 
 ,
 
 109 S.Ct. at 2026
 
 ,
 
 104 L.Ed.2d at 681-82
 
 .
 

 However, federal law prevents a veteran from receiving
 
 both
 
 retired pay and disability benefits. Thus, "[i]n order to prevent double dipping, a military retiree may receive disability benefits only to the extent that he waives a corresponding amount of his military retirement pay."
 

 Id.
 

 at 583
 
 ,
 
 109 S.Ct. at 2026
 
 ,
 
 104 L.Ed.2d at 682
 
 .
 

 *896
 
 Generally, "federal law ... preempt[s] state law with regard to all military payments except 'disposable retired or retainer pay' ...."
 
 Hillard v. Hillard
 
 ,
 
 223 N.C. App. 20
 
 , 23,
 
 733 S.E.2d 176
 
 , 179 (2012),
 
 disc. review denied
 
 ,
 
 366 N.C. 432
 
 ,
 
 736 S.E.2d 490
 
 (2013). The Uniformed Services Former Spouses' Protection Act ("USFSPA") authorizes state courts to treat "disposable retired or retainer pay" as property divisible upon divorce that can be distributed to a former spouse.
 
 See
 
 id.
 

 However, although the USFSPA classifies military
 
 retired
 
 pay as "disposable retired or retainer pay," the statute does not include military
 
 disability
 
 benefits within the definition of "disposable retired or retainer pay."
 
 Id.
 
 at 22-23,
 
 733 S.E.2d at 179
 
 (emphasis added). Thus, military disability benefits "cannot be classified as marital property subject to distribution" and are instead "treated as the retiree's separate property."
 
 Id.
 
 at 23,
 
 733 S.E.2d at 179
 
 (citations omitted).
 

 "Because disability benefits are exempt from federal, state, and local taxation, military retirees who waive their retirement pay in favor of disability benefits increase their after-tax income. Not surprisingly, waivers of retirement pay are common."
 
 Mansell
 
 ,
 
 490 U.S. at 583-84
 
 ,
 
 109 S.Ct. at 2026
 
 ,
 
 104 L.Ed.2d at 682
 
 (internal citation omitted).
 

 Mr. Lesh's argument straddles two lines of cases from the United States Supreme Court. The first line of cases follows
 
 Mansell
 
 and stands for the proposition that federal law preempts state courts from ordering the division of military disability benefits and the distribution of these benefits to a veteran's former spouse. The second line of cases follows
 
 Rose v. Rose
 
 ,
 
 481 U.S. 619
 
 ,
 
 107 S.Ct. 2029
 
 ,
 
 95 L.Ed.2d 599
 
 (1987), and permits state courts to consider military disability benefits as income for purposes of calculating a veteran's ability to fulfill support obligations.
 

 As noted above, Mr. Lesh is contending in this appeal that the United States Supreme Court's recent decision in
 
 Howell
 
 constituted a substantive change in the law on this subject. Therefore, in order to fully address Mr. Lesh's argument, we must first review the state of the law as it existed prior to
 
 Howell
 
 and then determine whether-and to what extent-
 
 Howell
 
 changed the law as it applies to Mr. Lesh's obligations under the Equitable Distribution Order.
 

 In
 
 Mansell
 
 , a husband and wife entered into a property settlement upon their divorce in which the husband agreed to pay the wife 50% of his total military retirement pay, "including that portion of retirement pay waived so that [he] could receive disability benefits."
 
 Mansell
 
 ,
 
 490 U.S. at 586
 
 ,
 
 109 S.Ct. at 2027
 
 ,
 
 104 L.Ed.2d at 683
 
 . Four years later, the husband made a motion to modify the divorce decree, requesting that the trial court remove the provision requiring him to share his total retirement pay with his ex-wife.
 

 Id.
 

 at 586
 
 ,
 
 109 S.Ct. at 2027
 
 ,
 
 104 L.Ed.2d at 683
 
 . The trial court denied the request, and California's appellate courts affirmed this decision.
 

 Id.
 

 at 587
 
 ,
 
 109 S.Ct. at 2027-28
 
 ,
 
 104 L.Ed.2d at 684
 
 .
 

 The United States Supreme Court reversed. The Court examined the statutory definition of "disposable retired or retainer pay" contained in
 
 10 U.S.C. § 1408
 
 (a)(4) and the complementary provisions contained in
 
 10 U.S.C. § 1408
 
 (c) that limit property divisible upon divorce to "disposable retired pay."
 

 Id.
 

 at 590-92
 
 ,
 
 109 S.Ct. at 2029-31
 
 ,
 
 104 L.Ed.2d at 686-87
 
 . The Supreme Court then stated as follows:
 

 [T]he view that the [USFSPA] is solely a garnishment statute and therefore not intended to pre-empt the authority of state courts is contradicted not only by § 1408(c)(1), but also by the other subsections of § 1408(c). Sections 1408(c)(2), (c)(3), and (c)(4) impose new substantive limits on state courts' power to divide military retirement pay. Section 1408(c)(2) prevents a former spouse from transferring, selling, or otherwise disposing of her community interest in the military retirement pay. Section 1408(c)(3) provides that a state court cannot order a military member to retire so that the former spouse can immediately begin receiving her portion of military retirement pay. And § 1408(c)(4) prevents spouses from forum shopping for a State with favorable divorce laws. Because
 
 *897
 
 each of these provisions pre-empts state law, the argument that the Act has no pre-emptive effect of its own must fail. Significantly, Congress placed each of these substantive restrictions on state courts in the same section of the Act as § 1408(c)(1). We think it unlikely that every subsection of § 1408(c), except § 1408(c)(1), was intended to pre-empt state law.
 

 Id.
 

 The Court further ruled that "the legislative history, read as a whole, indicates that Congress intended both to create new benefits for former spouses and to place limits on state courts designed to protect military retirees."
 

 Id.
 

 at 594
 
 ,
 
 109 S.Ct. at 2031
 
 ,
 
 104 L.Ed.2d at 688
 
 . Thus, the Court held that "the [USFSPA] does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits."
 

 Id.
 

 at 594-95
 
 ,
 
 109 S.Ct. at 2032
 
 ,
 
 104 L.Ed.2d at 689
 
 .
 

 Since
 
 Mansell
 
 , North Carolina courts have held that military disability benefits cannot be considered marital property and therefore are not subject to distribution.
 
 See, e.g.
 
 ,
 
 Halstead v. Halstead
 
 ,
 
 164 N.C. App. 543
 
 , 547,
 
 596 S.E.2d 353
 
 , 356 (2004) ("Disability benefits should not, either in form or substance, be treated as marital property subject to division upon the dissolution of marriage.");
 
 Bishop v. Bishop
 
 ,
 
 113 N.C. App. 725
 
 , 734,
 
 440 S.E.2d 591
 
 , 597 (1994) (holding that defendant's military income based on "service related disability retirement" could not be classified as marital property).
 

 Although
 
 Mansell
 
 is controlling on the issue of whether military disability benefits can be
 
 distributed
 
 , it does not answer the separate question of whether such benefits can be considered
 
 income
 
 for purposes of determining the financial ability of a veteran to pay a distributive award. On this latter question, we must examine the United States Supreme Court's decision in
 
 Rose
 
 in which the United States Supreme Court addressed the extent to which trial courts can consider military disability benefits as "income" for purposes of calculating support obligations.
 

 In
 
 Rose
 
 , a disabled veteran whose main source of income was his military disability benefits was held in contempt for failing to pay child support to his ex-wife. He argued that the state court was preempted from enforcing the child support payment by
 
 38 U.S.C. § 3101
 
 (a), which provided that veterans' benefits payments could not be subject to attachment, levy, or seizure.
 
 Rose
 
 ,
 
 481 U.S. at 620-22
 
 ,
 
 107 S.Ct. at 2030-32
 
 ,
 
 95 L.Ed.2d at 605
 
 . He contended that because his only means of satisfying his child support obligation was by using his veterans' disability benefits, the court was effectively ordering him to make payments in violation of federal law.
 

 Id.
 

 The Supreme Court rejected this argument, concluding that the state court could "consider disability benefits as part of the veteran's income in setting the amount of child support to be paid."
 

 Id.
 

 at 626
 
 ,
 
 107 S.Ct. at 2034
 
 ,
 
 95 L.Ed.2d at 608
 
 (emphasis omitted). The Court "d[id] not agree that ... the state court's award of child support from appellant's disability benefits does major damage to any clear and substantial federal interest created by this statute."
 

 Id.
 

 at 628
 
 ,
 
 107 S.Ct. at 2035
 
 ,
 
 95 L.Ed.2d at 609
 
 (quotation marks omitted). In so ruling, the Court held that "[n]either the Veterans' Benefits provisions of Title 38 nor the garnishment provisions of the Child Support Enforcement Act of Title 42 indicate unequivocally that a veteran's disability benefits are provided solely for that veteran's support."
 

 Id.
 

 at 636
 
 ,
 
 107 S.Ct. at 2039
 
 ,
 
 95 L.Ed.2d at 614
 
 . Thus, the United States Supreme Court has permitted military disability benefits to be classified as income for purposes of the fulfillment of a veteran's child support obligations.
 

 We are also guided by the North Carolina Supreme Court's decision in
 
 Comstock v. Comstock
 
 ,
 
 240 N.C. App. 304
 
 ,
 
 771 S.E.2d 602
 
 (2015). In
 
 Comstock
 
 , the defendant possessed a U.S. Trust IRA as his separate property, and the trial court concluded that it could not be classified as a marital asset. However, in ordering distributive payments during equitable distribution, the trial court included the trust account in determining the defendant's available income for purposes of satisfying
 
 *898
 
 the distributive award.
 
 Id.
 
 at 321,
 
 771 S.E.2d at 614
 
 .
 

 On appeal, the defendant argued that the trial court had improperly considered the trust account as income from which he could pay a distributive award. Our Supreme Court rejected his argument, stating the following:
 

 Here, the U.S. Trust IRA was not a marital asset as the parties stipulated that it was defendant's separate property. As such, it was not subject to division through equitable distribution .... However, defendant's U.S. Trust IRA, a separate liquid asset, was available as a resource from which the trial court could order a distributive award.
 

 Id.
 
 at 321,
 
 771 S.E.2d at 614
 
 (internal citation omitted). Thus, because the trial court did not distribute the asset and was instead merely considering it as a source of income for purposes of distributive payments, our Supreme Court held that the distributive award did not violate North Carolina law.
 

 Id.
 

 Our analysis of
 
 Mansell
 
 ,
 
 Rose
 
 , and
 
 Comstock
 
 leads us to the following conclusion: In equitable distribution cases where a trial court is considering a veteran's income for the purpose of ordering payment of a distributive award, the court may treat the veteran's military benefits as income from which he can make distributive payments, but the court cannot actually treat the military disability benefits as marital property to be divided.
 
 See
 

 id.
 
 at 321,
 
 771 S.E.2d at 614
 
 . The only remaining question is whether the United States Supreme Court's decision in
 
 Howell
 
 materially alters this conclusion. We conclude that it does not.
 

 In
 
 Howell
 
 , a husband and wife divorced, and an Arizona trial court entered an order awarding the wife 50% of the husband's future Air Force retirement pay, which she began to receive when he retired the following year. Thirteen years later, the Department of Veterans Affairs determined that the husband was partially disabled due to an earlier service-related injury. In order to receive military disability benefits, the husband elected to waive an equivalent amount of his military veteran's retirement pay.
 
 Howell
 
 , --- U.S. at ----,
 
 137 S.Ct. at 1401
 
 ,
 
 197 L.Ed.2d at 783
 
 . After the wife petitioned to enforce the original order, the Arizona court entered an order restoring her share of the husband's retired pay. The Arizona Supreme Court attempted to distinguish
 
 Mansell
 
 in holding that federal law did not preempt the trial court's order distributing the husband's military disability benefits to the wife.
 

 Id.
 

 at ----,
 
 137 S.Ct. at 1401
 
 ,
 
 197 L.Ed.2d at 783
 
 .
 

 On appeal, the wife contended that she had a vested interest in her ex-husband's military veteran's retirement pay despite the fact that he had elected to waive these payments in the future.
 

 Id.
 

 at ----,
 
 137 S.Ct. at 1404
 
 ,
 
 197 L.Ed.2d at 787
 
 . She argued that because the husband had waived $250 of this retirement pay by election in order to instead receive military disability benefits, he had reduced her 50% share in his benefits. Thus, she asserted, she was entitled to a 50% share of her husband's total retirement pay, including the military disability benefits.
 

 Id.
 

 at ----,
 
 137 S.Ct. at 1404
 
 ,
 
 197 L.Ed.2d at 787-88
 
 .
 

 The United States Supreme Court held that the Arizona court could not order the husband to indemnify his divorced spouse for the loss of her portion of his retirement pay resulting from his waiver. The Court held that pursuant to
 
 38 U.S.C. § 5301
 
 "federal law ... [has] completely pre-empted the application of state community property law to military retirement pay."
 

 Id.
 

 at ----,
 
 137 S.Ct. at 1403
 
 ,
 
 197 L.Ed.2d at 786
 
 (citation and quotation marks omitted).
 

 We see nothing in this circumstance that makes the reimbursement award to [the wife] any the less an award of the portion of military retirement pay that [the husband] waived in order to obtain disability benefits. And that is the portion that Congress omitted from the Act's definition of "disposable retired pay," namely, the portion that federal law prohibits state courts from awarding to a divorced veteran's former spouse. That the Arizona courts referred to [the wife's] interest in the waivable portion as having "vested" does not help. State courts cannot "vest" that which (under governing federal law) they lack the authority to give. Accordingly, while the divorce decree might be said to "vest" [the wife] with an immediate right to half of [the husband's] military retirement pay,
 
 *899
 
 that interest is, at most, contingent, depending for its amount on a subsequent condition: [the husband's] possible waiver of that pay.
 

 Id.
 

 at ----,
 
 137 S.Ct. at 1405-06
 
 ,
 
 197 L.Ed.2d at 788
 
 (citation and quotation marks omitted).
 

 The Supreme Court further held that because
 
 38 U.S.C. § 5301
 
 prohibits military benefits from being assignable by state courts, the Arizona court was prohibited from requiring the husband to reimburse or indemnify the wife for the cost of his waiver after the entry of the divorce decree.
 

 Id.
 

 at ----,
 
 137 S.Ct. at 1406
 
 ,
 
 197 L.Ed.2d at 788
 
 . In so ruling, the Court stated as follows:
 

 Neither can the State avoid
 
 Mansell
 
 by describing the family court order as an order requiring [the husband] to "reimburse" or to "indemnify" [the wife], rather than an order that divides property. The difference is semantic and nothing more. The principal reason the state courts have given for ordering reimbursement or indemnification is that they wish to restore the amount previously awarded as community property,
 
 i.e.
 
 , to restore that portion of retirement pay lost due to the postdivorce waiver. And we note that here, the amount of indemnification mirrors the waived retirement pay, dollar for dollar. Regardless of their form, such reimbursement and indemnification orders displace the federal rule and stand as an obstacle to the accomplishment and execution of the purposes and objectives of Congress. All such orders are thus preempted.
 

 Id.
 

 at ----,
 
 137 S.Ct. at 1406
 
 ,
 
 197 L.Ed.2d at 788
 
 .
 

 Therefore, while
 
 Howell
 
 reaffirms and clarifies the holding in
 
 Mansell
 
 , it has no effect on the
 
 Rose
 
 line of cases. Thus,
 
 Howell
 
 does not change our analysis in the present case.
 

 Here, as discussed above, the Equitable Distribution Order required Mr. Lesh to pay Ms. Lesh a distributive award in the amount of $31,590.59 by means of monthly installments of $877.22. The trial court did not attempt to treat Mr. Lesh's military disability benefits as marital property. Indeed, to the contrary, the Equitable Distribution Order expressly stated the following:
 

 b.
 
 Husband's Military Medical Retirement
 
 : The parties stipulated that because Husband receives military disability retired pay, which is exempt from division pursuant to 10 U.S.C. 1408, said property is separate.
 

 Accordingly, the military disability benefits were excluded by the trial court in calculating the total amount of marital property eligible to be divided upon the parties' divorce.
 

 In attempting to rely upon
 
 Howell
 
 , Mr. Lesh is apparently contending that the trial court's order effectively requires him to "reimburse" or "indemnify" Ms. Lesh the amount that she would have received had he not elected to waive his retirement pay in order to receive his military disability benefits. However, this characterization of the Equitable Distribution Order is incorrect. The trial court's Equitable Distribution Order simply does not involve the type of issue addressed in
 
 Howell
 
 .
 

 Nothing in
 
 Howell
 
 alters the holding in
 
 Rose
 
 that military disability benefits are not required to be excluded from the definition of income for purposes of calculating the resources a party can draw upon to fulfill child support obligations.
 
 See
 

 Rose
 
 ,
 
 481 U.S. at 636
 
 ,
 
 107 S.Ct. at 2039
 
 ,
 
 95 L.Ed.2d at 614
 
 . As our Supreme Court held in
 
 Comstock
 
 , a similar principle applies to distributive awards. Therefore, the trial court properly determined that federal law did not preempt the portion of the Equitable Distribution Order requiring Mr. Lesh to make distributive payments. Accordingly, Mr. Lesh's argument on this issue is overruled.
 
 [2]
 

 II. Civil Contempt
 

 Mr. Lesh's final argument is that the trial court erred by holding him in civil
 
 *900
 
 contempt for his failure to make the monthly distributive payments required by the Equitable Distribution Order. We disagree.
 

 The standard of review for contempt proceedings is limited to determining whether there is competent evidence to support the findings of fact and whether the findings support the conclusions of law. When the trial court fails to make sufficient findings of fact and conclusions of law in its contempt order, reversal is proper.
 

 Thompson v. Thompson
 
 ,
 
 223 N.C. App. 515
 
 , 518,
 
 735 S.E.2d 214
 
 , 216 (2012) (internal citations omitted). N.C. Gen. Stat. § 5A-21 states as follows:
 

 (a) Failure to comply with an order of a court is a continuing civil contempt as long as:
 

 (1) The order remains in force;
 

 (2) The purpose of the order may still be served by compliance with the order;
 

 (2a) The noncompliance by the person to whom the order is directed is willful; and
 

 (3) The person to whom the order is directed is able to comply with the order or is able to take reasonable measures that would enable the person to comply with the order.
 

 N.C. Gen. Stat. § 5A-21 (2015).
 

 Mr. Lesh contends that the trial court erred by concluding that (1) he had the present ability to pay the distributive award; and (2) his failure to comply with the order was willful. In its 27 January 2017 order, the trial court made the following pertinent findings of fact:
 

 6. [Mr. Lesh] has failed to comply with the terms of the aforesaid Order in that [Mr. Lesh] has failed to pay the distributive award to [Ms. Lesh] or make any payments thereon.
 

 7. [Mr. Lesh]'s non-compliance with the aforesaid Order has been willful and without legal justification or excuse in that since the entry of the aforesaid Order, [Mr. Lesh] has had the means and ability whereby to comply with the terms of the aforesaid Order of the Court and presently has the means and ability with which to comply with the aforesaid Order or is able to take measures that would enable him to comply with the said Order.
 

 8. [Mr. Lesh] should be ordered to comply with the order of the Court and held in contempt for his violation thereof.
 

 Based on these findings of fact, the trial court made the following pertinent conclusions of law:
 

 2. The failure of [Mr. Lesh] to comply with the Orders of this Court as hereinabove described is willful, deliberate, and without just cause.
 

 3. [Mr. Lesh] is in civil contempt of this Court's Orders directing him to pay a distributive award to [Ms. Lesh] in the sum of $31,590.59, to be paid in monthly installments in the amount of $877.22, commencing on April 1, 2016 and continuing on the first of the month every month until said sum is paid in full.
 

 ....
 

 5. [Mr. Lesh] should pay attorney's fees on behalf of [Ms. Lesh] in the sum of $660.04.
 

 On appeal, Mr. Lesh has not specifically challenged any of the trial court's findings of fact. Therefore, they are binding on appeal.
 
 See
 

 Koufman v. Koufman
 
 ,
 
 330 N.C. 93
 
 , 97,
 
 408 S.E.2d 729
 
 , 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal."). Therefore, we review the trial court's order to determine if the unchallenged findings of fact support its conclusions of law.
 

 First, with regard to the "present ability to pay" prong, this Court has held that
 

 [a] factual finding that the [individual] has had the ability to pay as ordered supports the legal conclusion that violation of the order was willful; however, standing alone, this finding of fact does not support the conclusion of law that [the individual] has the present ability to purge himself of the contempt by paying the arrearages.
 

 Thompson
 
 , 223 N.C. App. at 519,
 
 735 S.E.2d at 217
 
 (citation and quotation marks omitted).
 

 *901
 
 Mr. Lesh attempts to rely on cases in which this Court has held that the trial court failed to make specific findings that a defendant possessed the
 
 present
 
 ability to pay the
 
 full
 
 court-ordered support obligation.
 
 See
 

 Spears v. Spears
 
 ,
 
 245 N.C. App. 260
 
 , ----,
 
 784 S.E.2d 485
 
 , 495 (2016) (trial court's finding that defendant had ability to "pay
 
 more
 
 " of his support obligation was insufficient to conclude that defendant had the ability to "pay
 
 all
 
 " of his support obligation (quotation marks omitted and emphasis added));
 
 Teachey v. Teachey
 
 ,
 
 46 N.C. App. 332
 
 , 333-35,
 
 264 S.E.2d 786
 
 , 787-88 (1980) (trial court's finding that defendant "
 
 has
 
 possessed the means with which to comply with the Order" was insufficient to support conclusion that defendant "had the
 
 present
 
 ability to pay" (emphasis added)).
 

 Here, conversely, Mr. Lesh does not argue that the 27 January 2017 order failed to contain findings as to his present ability to pay. Nor could he make such an argument as the court expressly found both that Mr. Lesh "has had the means and ability whereby to comply with the ... Order"
 
 and
 
 that he "
 
 presently
 
 has the means and ability with which to comply with the ... Order or is able to take measures that would enable him to comply with the ... Order." (Emphasis added). Unlike the findings of fact in
 
 Spears
 
 and
 
 Teachey
 
 , this finding meets the requirements of N.C. Gen. Stat. § 5A-21.
 

 Moreover, we note that this finding is supported by competent evidence. Mr. Lesh filed an affidavit in which he stated that he receives monthly income of $5,109.24 and that his monthly expenses (assuming the monthly payment of the distributive award was included) would total $5,001.43. Therefore, even after payment of the distributive award and his other monthly bills, Mr. Lesh would still retain $107.81 per month. While Mr. Lesh contends that such a breakdown of his monthly income fails to take into account the fact that his income consists of his military disability benefits (and is therefore exempt from distribution), this contention is merely derivative of his federal preemption argument, which we have rejected.
 

 Second, Mr. Lesh argues that the willfulness prong has not been met. "This Court has held that willfulness is (1) an ability to comply with the court order; and (2) a deliberate and intentional failure to do so."
 
 Moss v. Moss
 
 ,
 
 222 N.C. App. 75
 
 , 80,
 
 730 S.E.2d 203
 
 , 206 (2012) (citation and quotation marks omitted). A court may find a party's noncompliance to be willful "if there is both knowledge and a stubborn resistance of a trial court directive."
 
 Williams v. Chaney
 
 , --- N.C. App. ----, ----,
 
 792 S.E.2d 207
 
 , 210 (2016) (citation and quotation marks omitted). "However, if the prior order is
 
 ambiguous
 
 such that a defendant could not understand his respective rights and obligations under that order, he cannot be said to have
 
 knowledge
 
 of that order for purposes of contempt proceedings."
 

 Id.
 

 at ----,
 
 792 S.E.2d at 210
 
 .
 

 Mr. Lesh does not argue that he lacked knowledge of the Equitable Distribution Order or that the order contained any ambiguity. Instead, he simply repeats his federal preemption argument regarding his military disability benefits. Because that argument lacks merit, he has failed to show that the trial court erred in determining that his failure to make the distributive payments was willful.
 
 See
 

 Hartsell v. Hartsell
 
 ,
 
 99 N.C. App. 380
 
 , 393,
 
 393 S.E.2d 570
 
 , 578 (1990) (affirming order holding defendant in civil contempt where evidence supported findings that his noncompliance with court order was willful),
 
 aff'd per curiam
 
 ,
 
 328 N.C. 729
 
 ,
 
 403 S.E.2d 307
 
 (1991).
 

 Conclusion
 

 For the reasons stated above, we affirm the trial court's 27 January 2017 order.
 

 AFFIRMED.
 

 Judges BRYANT and INMAN concur.
 

 [1]
 

 It appears that an initial contempt order was entered on 18 January 2017. However, that initial order is not contained in the record on appeal.
 

 [2]
 

 In her appellate brief, Ms. Lesh has sought sanctions against Mr. Lesh pursuant to Rule 34 of the North Carolina Rules of Appellate Procedure for appealing the denial of his Rule 60(b)(6) motion. In our discretion, we decline to impose sanctions under Rule 34.
 
 See
 

 State v. Hudgins
 
 ,
 
 195 N.C. App. 430
 
 , 436,
 
 672 S.E.2d 717
 
 , 721 (2009) ("In our discretion, we do not impose sanctions upon counsel pursuant to Rule 34.").